## OREGON *v.* KENNEDY

No. 80–1991.   Argued March 29, 1982—Decided May 24, 1982

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, POWELL, and O'CONNOR, JJ., joined. POWELL, J., filed a concurring opinion, *post*, p. 679. BRENNAN, J., filed an opinion concurring in the judgment, in which MARSHALL, J., joined, *post*, p. 680. STEVENS, J., filed an opinion concurring in the judgment, in which BRENNAN, MARSHALL, and BLACKMUN, JJ., joined, *post*, p. 681.

*Dave Frohnmayer*, Attorney General of Oregon, argued the cause for petitioner. With him on the brief were *William F. Gary*, Solicitor General, and *Robert E. Barton, John C. Bradley, Thomas H. Denney*, and *Stephen F. Peifer*, Assistant Attorneys General.

*Donald C. Walker* argued the cause and filed a brief for respondent.

*Samuel A. Alito, Jr.*, argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Lee, Assistant Attorney General Jensen, Deputy Solicitor General Frey*, and *David B. Smith*.*

JUSTICE REHNQUIST delivered the opinion of the Court.

The Oregon Court of Appeals decided that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution barred respondent's retrial after his first trial ended in a mistrial granted on his own motion. 49 Ore. App. 415, 619 P. 2d 948 (1980), cert. granted, 454 U. S. 891 (1981). The Court of Appeals concluded that retrial was barred because the prosecutorial misconduct that occasioned the mistrial in the first instance amounted to "overreaching." Because that court took an

---

*Jennifer Friesen* filed a brief for the American Civil Liberties Union Foundation of Oregon, Inc., as *amicus curiae*.

overly expansive view of the application of the Double Jeopardy Clause following a mistrial resulting from the defendant's own motion, we reverse its judgment.

## I

Respondent was charged with the theft of an oriental rug. During his first trial, the State called an expert witness on the subject of Middle Eastern rugs to testify as to the value and the identity of the rug in question. On cross-examination, respondent's attorney apparently attempted to establish bias on the part of the expert witness by asking him whether he had filed a criminal complaint against respondent. The witness eventually acknowledged this fact, but explained that no action had been taken on his complaint. On redirect examination, the prosecutor sought to elicit the reasons why the witness had filed a complaint against respondent, but the trial court sustained a series of objections to this line of inquiry.[1] The following colloquy then ensued:

"Prosecutor: Have you ever done business with the Kennedys?
"Witness: No, I have not.
"Prosecutor: Is that because he is a crook?"

The trial court then granted respondent's motion for a mistrial.

When the State later sought to retry respondent, he moved to dismiss the charges because of double jeopardy. After a hearing at which the prosecutor testified, the trial court[2] found as a fact that "it was not the intention of the prosecutor in this case to cause a mistrial." 49 Ore. App., at

---

[1] The Court of Appeals later explained that respondent's "objections were not well taken, and the judge's rulings were probably wrong." 49 Ore. App. 415, 417, 619 P. 2d 948, 949 (1980).

[2] These proceedings were not conducted by the same trial judge who presided over respondent's initial trial.

418, 619 P. 2d, at 949.   On the basis of this finding, the trial court held that double jeopardy principles did not bar retrial, and respondent was then tried and convicted.

Respondent then successfully appealed to the Oregon Court of Appeals, which sustained his double jeopardy claim. That court set out what it considered to be the governing principles in this kind of case:

> "The general rule is said to be that the double jeopardy clause does not bar reprosecution, '. . . where circumstances develop not attributable to prosecutorial or judicial overreaching, . . . even if defendant's motion is necessitated by a prosecutorial error.' *United States* v. *Jorn*, 400 U. S. 470, 485 . . . (197[1]).   However, retrial is barred where the error that prompted the mistrial is intended to provoke a mistrial or is 'motivated by bad faith or undertaken to harass or prejudice' the defendant.   *United States* v. *Dinitz*, 424 U. S. 600, 611 . . . (1976).   Accord, *State* v. *Rathbun*, 37 Or. App. 259, 586 P. 2d 1136 (1978), *reversed on other grounds*, 287 Or. 421, [600] P. 2d [329] (1979)." *Id.*, at 417–418, 619 P. 2d, at 949.

The Court of Appeals accepted the trial court's finding that it was not the intent of the prosecutor to cause a mistrial. Nevertheless, the court held that retrial was barred because the prosecutor's conduct in this case constituted what it viewed as "overreaching."   Although the prosecutor intended to rehabilitate the witness, the Court of Appeals expressed the view that the question was in fact "a direct personal attack on the general character of the defendant." *Id.*, at 418, 619 P. 2d, at 949.   This personal attack left respondent with a "Hobson's choice—either to accept a necessarily prejudiced jury, or to move for a mistrial and face the process of being retried at a later time." *Id.*, at 418, 619 P. 2d, at 950.

Before turning to the merits of the double jeopardy claim, we are met with the respondent's contention that the Court

of Appeals' decision is based upon an adequate and independent state ground. Respondent contends in the alternative that the basis for the decision below is sufficiently uncertain that we ought to remand this case in order that the Court of Appeals may clarify the grounds upon which its judgment rested. See *Delaware* v. *Prouse*, 440 U. S. 648, 652 (1979); *California* v. *Krivda*, 409 U. S. 33, 35 (1972).

We reject both of these contentions. A fair reading of the opinion below convinces us that the Court of Appeals rested its decision solely on federal law. With one exception, the cases it cited in outlining the "general rule" that guided its decision are decisions of this Court. The Court of Appeals' citation to *State* v. *Rathbun*, 37 Ore. App. 259, 586 P. 2d 1136 (1978), rev'd, 287 Ore. 421, 600 P. 2d 392 (1979), was clearly to its own decision in that case, rather than the decision of the Oregon Supreme Court. Although the Supreme Court's decision in *Rathbun* was based on state statutory and constitutional grounds, the Court of Appeals' decision in *Rathbun* clearly rested on federal grounds, a fact which was so recognized by the Oregon Supreme Court. *Id.*, at 430–431, 600 P. 2d, at 396–397. Even if the case admitted of more doubt as to whether federal and state grounds for decision were intermixed, the fact that the state court relied to the extent it did on federal grounds requires us to reach the merits. *Zacchini* v. *Scripps-Howard Broadcasting Co.*, 433 U. S. 562, 568 (1977).

## II

The Double Jeopardy Clause of the Fifth Amendment[3] protects a criminal defendant from repeated prosecutions for the same offense. *United States* v. *Dinitz*, 424 U. S. 600, 606 (1976). As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a

[3] This Court held in *Benton* v. *Maryland*, 395 U. S. 784 (1969), that this Clause was made applicable to the States through the Due Process Clause of the Fourteenth Amendment.

particular tribunal." *Wade* v. *Hunter*, 336 U. S. 684, 689 (1949). The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. *United States* v. *Jorn*, 400 U. S. 470, 483–484 (1971) (plurality opinion); *Wade* v. *Hunter*, 336 U. S., at 689. If the law were otherwise, "the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again." *Ibid.*

Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the "manifest necessity" standard first enunciated in Justice Story's opinion for the Court in *United States* v. *Perez*, 9 Wheat. 579, 580 (1824). *Perez* dealt with the most common form of "manifest necessity": a mistrial declared by the judge following the jury's declaration that it was unable to reach a verdict. While other situations have been recognized by our cases as meeting the "manifest necessity" standard, the hung jury remains the prototypical example. See, *e. g., Arizona* v. *Washington*, 434 U. S. 497, 509 (1978); *Illinois* v. *Somerville*, 410 U. S. 458, 463 (1973). The "manifest necessity" standard provides sufficient protection to the defendant's interests in having his case finally decided by the jury first selected while at the same time maintaining "the public's interest in fair trials designed to end in just judgments." *Wade* v. *Hunter, supra,* at 689.

But in the case of a mistrial declared at the behest of the defendant, quite different principles come into play. Here the defendant himself has elected to terminate the proceedings against him, and the "manifest necessity" standard has no place in the application of the Double Jeopardy Clause. *United States* v. *Dinitz, supra,* at 607–610. Indeed, in *United States* v. *Tateo*, 377 U. S. 463, 467 (1964), the Court stated:

"If Tateo had *requested* a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him" (emphasis in original).

Our cases, however, have indicated that even where the defendant moves for a mistrial, there is a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial. See, *e. g., United States* v. *DiFrancesco,* 449 U. S. 117, 130 (1980); *United States* v. *Dinitz, supra,* at 611; *United States* v. *Jorn, supra,* at 485; *United States* v. *Tateo, supra,* at 468, n. 3. The circumstances under which respondent's first trial was terminated require us to delineate the bounds of that exception more fully than we have in previous cases.

Since one of the principal threads making up the protection embodied in the Double Jeopardy Clause is the right of the defendant to have his trial completed before the first jury empaneled to try him, it may be wondered as a matter of original inquiry why the defendant's election to terminate the first trial by his own motion should not be deemed a renunciation of that right for all purposes. We have recognized, however, that there would be great difficulty in applying such a rule where the prosecutor's actions giving rise to the motion for mistrial were done "in order to goad the [defendant] into requesting a mistrial." *United States* v. *Dinitz, supra,* at 611.[4] In such a case, the defendant's valued right to complete his trial before the first jury would be a hollow shell if the inevitable motion for mistrial were held to prevent a later invocation of the bar of double jeopardy in all circumstances. But the precise phrasing of the circumstances which *will* allow a defendant to interpose the defense of double jeopardy to a second prosecution where the first has terminated on his

---

[4] Cf. *United States* v. *Tateo,* 377 U. S. 463, 468, n. 3 (1964) ("If there were any intimation in a case that prosecutorial or judicial impropriety justifying a mistrial resulted from a fear that the jury was likely to acquit the accused, different considerations would, of course, obtain").

own motion for a mistrial have been stated with less than crystal clarity in our cases which deal with this area of the law. In *United States* v. *Dinitz*, 424 U. S., at 611, we said:

> "The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions."

This language would seem to follow the rule of *United States* v. *Tateo, supra,* at 468, n. 3, in limiting the exception to cases of governmental actions intended to provoke mistrial requests. But immediately following the quoted language we went on to say:

> "[The Double Jeopardy Clause] bars retrials where 'bad-faith conduct by judge or prosecutor,' threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." *United States* v. *Dinitz*, 424 U. S., at 611 (citation omitted).

The language just quoted would seem to broaden the test from one of *intent* to provoke a motion for a mistrial to a more generalized standard of "bad faith conduct" or "harassment" on the part of the judge or prosecutor. It was upon this language that the Oregon Court of Appeals apparently relied in concluding that the prosecutor's colloquy with the expert witness in this case amount to "overreaching."

The difficulty with the more general standards which would permit a broader exception than one merely based on intent is that they offer virtually no standards for their application. Every act on the part of a rational prosecutor during a trial is designed to "prejudice" the defendant by placing before the judge or jury evidence leading to a finding of his guilt. Given the complexity of the rules of evidence, it will be a rare trial of any complexity in which some proffered evi-

dence by the prosecutor or by the defendant's attorney will not be found objectionable by the trial court. Most such objections are undoubtedly curable by simply refusing to allow the proffered evidence to be admitted, or in the case of a particular line of inquiry taken by counsel with a witness, by an admonition to desist from a particular line of inquiry.

More serious infractions on the part of the prosecutor may provoke a motion for mistrial on the part of the defendant, and may in the view of the trial court warrant the granting of such a motion. The "overreaching" standard applied by the court below and urged today by JUSTICE STEVENS, however, would add another classification of prosecutorial error, one requiring dismissal of the indictment, but without supplying any standard by which to assess that error.[5]

By contrast, a standard that examines the intent of the prosecutor, though certainly not entirely free from practical difficulties, is a manageable standard to apply. It merely calls for the court to make a finding of fact. Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system. When it is remembered that resolution of double jeopardy questions by state trial courts are reviewable not only within the state court system, but in the federal court system on habeas corpus as well, the desirability of an easily applied principle is apparent.

Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on de-

---

[5] If the Court were to hold, as would JUSTICE STEVENS, that such a determination requires an assessment of the facts and circumstances but without explaining how such an assessment ought to proceed, the Court would offer little guidance to the federal and state courts that must apply our decisions. JUSTICE STEVENS disagrees with the decision below because his reaction to a cold record is different from that of the Oregon Court of Appeals. The Court of Appeals found "overreaching"; JUSTICE STEVENS finds none. Neither articulates a basis for reaching their respective conclusions which can be applied to other factual situations. We are loath to adopt such an essentially standardless rule.

fendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States* v. *Scott,* 437 U. S. 82, 93 (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *United States* v. *Dinitz, supra,* at 609. Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

Were we to embrace the broad and somewhat amorphous standard adopted by the Oregon Court of Appeals, we are not sure that criminal defendants as a class would be aided. Knowing that the granting of the defendant's motion for mistrial would all but inevitably bring with it an attempt to bar a second trial on grounds of double jeopardy, the judge presiding over the first trial might well be more loath to grant a defendant's motion for mistrial.[6] If a mistrial were in fact warranted under the applicable law, of course, the defendant could in many instances successfully appeal a judgment of conviction on the same grounds that he urged a mistrial, and the Double Jeopardy Clause would present no bar to retrial.[7] But some of the advantages secured to him by the Double

---

[6] This Court has consistently held that the Double Jeopardy Clause imposes no limitation upon the power of the government to retry a defendant who has succeeded in persuading a court to set his conviction aside, unless the conviction has been reversed because of the insufficiency of the evidence. See, *e. g., United States* v. *DiFrancesco,* 449 U. S. 117, 130–131 (1980).

[7] JUSTICE STEVENS' opinion concurring in the judgment criticizes the suggestion that the broader rule he espouses would make it less likely the judges would grant a motion for mistrial than if the narrower rule pre-

Jeopardy Clause—the freedom from extended anxiety, and the necessity to confront the government's case only once— would be to a large extent lost in the process of trial to verdict, reversal on appeal, and subsequent retrial. See *United States* v. *Dinitz*, 424 U. S., at 608.

In adopting the position we now do, we recognize that language taken from our earlier opinions may well suggest a

---

vailed. *Post*, at 687–688, n. 22. JUSTICE STEVENS' criticism of our conclusion appears to be based on the erroneous assumption that the courts in such a situation would be applying the narrow rule, rather than the broad rule. Tested by the correct assumption that the courts would be applying the all-encompassing standard denominated "overreaching," which he espouses, *post*, at 689–690, we do not find his criticisms persuasive. If appellate courts and trial courts alike in this branch of the law of double jeopardy were applying a rule of "black letter law" to a predetermined set of facts, it might be true that an appellate court would inevitably reach the conclusion that reprosecution should be barred in a number of cases where the trial court had actually denied the motion for mistrial. But there are two reasons why such a hypothesis is inapplicable here.

First, the rule espoused by JUSTICE STEVENS is anything but a rule of "black letter law." We are admonished that "[i]t is unnecessary and unwise to attempt to identify all the factors that might inform the court's judgment." *Ibid.* Second, appellate courts have traditionally given weight to a trial court's assessment as to the necessity for a mistrial in deciding questions of double jeopardy. As this Court said in *Gori* v. *United States*, 367 U. S. 364, 368 (1961):

"Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be obtained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment."

It seems entirely reasonable to expect, therefore, that appellate judges will continue to defer to the judgment of trial judges who are "on the scene" in this area, and that they will not inexorably reach the same conclusion on a cold record at the appellate stage that they might if any one of them had been sitting as a trial judge. And a trial judge trying to faithfully apply the amorphous standard enunciated by JUSTICE STEVENS could surely be forgiven if in cases he regarded as extremely close he resolved the doubt in favor of continuing a trial to its conclusion rather than aborting it.

broader rule.[8]   The Court of Appeals in this case, for example, may have derived its "overreaching" standard from the following language in the plurality opinion in *United States* v. *Jorn,* 400 U. S., at 485:

> "Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error."

A footnote attached to this sentence explains, however, that "where a defendant's mistrial motion is necessitated by judi-

---

[8] JUSTICE STEVENS states that we "gratuitously lo[p] off a portion of the previously recognized exception." *Post,* at 681.   This charge is simply not borne out by even a moderately careful reading of our cases on the point.   The footnote in *United States* v. *Tateo,* 377 U. S., at 468, n. 3, quoted in n. 4, *supra,* states the exception in terms of prosecutorial misconduct motivated by "fear that the jury was likely to acquit the accused." The plurality opinion in *United States* v. *Jorn,* 400 U. S. 470, 485 (1971), quoted in the text, states the test in the broader terms of "prosecutorial or judicial overreaching"; the Court's opinion in *United States* v. *Dinitz,* 424 U. S. 600 (1976), speaks at one point in terms of "governmental actions intended to provoke mistrial requests," *id.,* at 611, and at another point on the same page of "'bad-faith conduct by judge or prosecutor'" which "threatens the '[h]arassment of an accused by successive prosecutions . . . .'"   Only last Term, in *United States* v. *DiFrancesco, supra,* we said that "reprosecution of a defendant who has successfully moved for a mistrial is not barred, so long as the Government did not deliberately seek to provoke the mistrial request." *Id.,* at 130.

Thus, it is quite inaccurate to suggest that our previous cases have single-mindedly adhered to one rule in cases such as this, and that we are now "lopping off" a part of that rule.   However this case is decided, we are faced with a choice between two differing lines of authority in our own recent precedents; for the reasons stated in the text, *supra,* at 674–677, we think that the better arguments favor the rule which we adopt.   But JUSTICE STEVENS, no less than we, chooses one of two differing rules; the state of our case law indicates that the justification for the choice must be based upon principle, and not authority.

cial or prosecutorial impropriety designed to avoid an acquittal, reprosecution might well be barred." *Id.*, at 485, n. 12. There are likewise statements in *United States* v. *Dinitz*, *supra*, at 611, based largely on the plurality opinion in *Jorn* to the same effect.

Because of the confusion which these varying statements of the standard in question have occasioned in other courts, we deem it best to acknowledge the confusion and its justifiability in the light of these statements from previous decisions. We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial. But we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

Since the Oregon trial court found, and the Oregon Court of Appeals accepted, that the prosecutorial conduct culminating in the termination of the first trial in this case was not so intended by the prosecutor, that is the end of the matter for purposes of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. The judgment of the Oregon Court of Appeals is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE POWELL, concurring.

I join the Court's opinion holding that the *intention* of a prosecutor determines whether his conduct, viewed by the defendant and the court as justifying a mistrial, bars a retrial of the defendant under the Double Jeopardy Clause. Because "subjective" intent often may be unknowable, I empha-

size that a court—in considering a double jeopardy motion—should rely primarily upon the objective facts and circumstances of the particular case. See *ante*, at 675.

· In the present case the mistrial arose from the prosecutor's conduct in pursuing a line of redirect examination of a key witness. The Oregon Court of Appeals identified a single question as constituting "overreaching" so serious as to bar a retrial. Yet, there are few vigorously contested lawsuits—whether criminal or civil—in which improper questions are not asked. Our system *is* adversarial and vigorous advocacy is encouraged.

Nevertheless, this would have been a close case for me if there had been substantial factual evidence of intent beyond the question itself. Here, however, other relevant facts and circumstances strongly support the view that prosecutorial intent to cause a mistrial was absent. First, there was no sequence of overreaching prior to the single prejudicial question. See *ante*, at 669–670, and n. 1. Moreover, it is evident from a colloquy between counsel and the court, out of the presence of the jury, that the prosecutor not only resisted, but also was surprised by, the defendant's motion for a mistrial. See App. 24–29. Finally, at the hearing on respondent's double jeopardy motion, the prosecutor testified—and the trial found as a fact and the appellate court agreed—that there was no "'intention . . . to cause a mistrial.'" *Ante*, at 669.

In view of these circumstances, the Double Jeopardy Clause provides no bar to retrial.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring in the judgment.

I concur in the judgment and join in the opinion of JUSTICE STEVENS. However, it should be noted that nothing in the holding of the Court today prevents the state courts, on remand, from concluding that respondent's retrial would violate the provision of the Oregon Constitution that prohibits double jeopardy, Ore. Const., Art. I, § 12, as that provision

has been interpreted by the state courts, *State* v. *Rathbun*, 287 Ore. 421, 600 P. 2d 392 (1979). See *South Dakota* v. *Opperman*, 428 U. S. 364, 396 (1976) (MARSHALL, J., dissenting), on remand, *State* v. *Opperman*, 247 N. W. 2d 673 (S. D. 1976) (original State Supreme Court judgment adhered to as a matter of state constitutional law); *Oregon* v. *Hass*, 420 U. S. 714, 726 (1975) (MARSHALL, J., dissenting).

JUSTICE STEVENS, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, concurring in the judgment.

Unless the Oregon Court of Appeals based its decision on Oregon law,[1] this is a case in which the state court should have applied the general rule that a defendant's motion for a mistrial removes any double jeopardy bar to retrial. The prosecutor's mistake was not the kind of overreaching or harassment identified in our precedents as an exception to the general rule. Instead of explaining why that conclusion is required by settled law, this Court gratuitously lops off a portion of the previously recognized exception. This exercise in lawmaking is objectionable because it is wholly unnecessary and because it compromises an important protection provided by the Double Jeopardy Clause.

## I

The Double Jeopardy Clause represents a constitutional policy of finality for the defendant's benefit in criminal pro-

---

[1] Although I am willing to accept the Court's reading of the Oregon Court of Appeals' opinion as having been based on federal law, I find the question somewhat more difficult than does the Court because the Oregon Supreme Court declined to review the case without explaining its reasons. Since the Oregon Supreme Court seems to have interpreted the state constitutional protection against double jeopardy to be broader than the federal provision, see *State* v. *Rathbun*, 287 Ore. 421, 600 P. 2d 392 (1979), it is entirely possible that that court's refusal to review the Court of Appeals' decision was predicated on its view that the decision was sound as a matter of state law regardless of whether it was compelled by federal precedents.

ceedings.[2]   If the defendant is acquitted by the jury, or if he is convicted and the conviction is upheld on appeal, he may not be prosecuted again for the same offense.[3]   The defendant's interest in finality is not confined to final judgments; he also has a protected interest in having his guilt or innocence decided in one proceeding.[4]   That interest must be balanced against society's interest in affording the prosecutor one full and fair opportunity to present his evidence to the jury.[5] Our decisions in the mistrial setting accordingly have accommodated the defendant's double jeopardy interests[6] with legitimate prosecutorial interests.[7]

---

[2] *United States* v. *Jorn,* 400 U. S. 470, 479 (plurality opinion).

[3] *United States* v. *Ball,* 163 U. S. 662.

[4] *Arizona* v. *Washington,* 434 U. S. 497, 503.

[5] *Id.,* at 505.   The Court in *Wade* v. *Hunter,* 336 U. S. 684, explained: "The double-jeopardy provision of the Fifth Amendment . . . does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed.   There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again.   And there have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of a jury might be biased against the Government or the defendant.   It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial.   What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Id.,* at 688–689 (footnote omitted).

[6] "The reasons why [the defendant's 'valued right to have his trial completed by a particular tribunal'] merits constitutional protection are worthy of repetition.   Even if the first trial is not completed, a second prosecution may be grossly unfair.   It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk than an

The accommodation is reflected in two general rules that govern the permissibility of reprosecution after a mistrial. Which general rule applies turns on whether the defendant has retained control over the course to be followed once error has substantially tainted the initial proceeding.[8]   When a mistrial is declared over the defendant's objection, the general rule is that retrial is barred.[9]   An exception to this general rule exists for cases in which the mistrial was justified by "manifest necessity."[10]   The other general rule is that the defendant's motion for, or consent to, a mistrial removes any double jeopardy bar to reprosecution.[11]   There is an exception to this rule for cases in which the prosecutor[12] intended to provoke a mistrial or otherwise engaged in "overreaching" or "harassment."[13]   The prosecutor has the burden

innocent defendant may be convicted.   The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial."   *Arizona* v. *Washington, supra,* at 503–505 (footnotes omitted).

[7] Society's interest, of course, is not simply to convict the guilty. Rather, its interest is "in fair trials designed to end in just judgments." *Wade* v. *Hunter, supra,* at 689.

[8] See *United States* v. *Dinitz,* 424 U. S. 600, 609.

[9] *Arizona* v. *Washington,* 434 U. S., at 505.

[10] *Ibid.*

[11] *United States* v. *Jorn,* 400 U. S., at 485.

[12] The exception also encompasses comparable judicial misconduct.   Because we are confronted with prosecutorial error, this opinion will address only that context.

[13] *Ibid.*   The Court has never invoked the exception to bar reprosecution after a mistrial.   In only two cases has the Court actually been confronted with a claim that the exception applied.   In *United States* v. *Dinitz, supra,* the trial court had granted the defendant's motion for a mistrial after expelling defense counsel for repeated misconduct.   In holding that retrial was not barred by the Double Jeopardy Clause, this Court articulated the exception and the reasons why it was not established on the facts of that case:

"The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecu-

of proving the former exception for manifest necessity, and the defendant has the burden of proving the latter exception for overreaching.

tions.    It bars retrials where 'bad-faith conduct by judge or prosecutor,' *United States* v. *Jorn, supra,* at 485, threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant. *Downum* v. *United States,* 372 U. S., at 736.    See *Gori* v. *United States,* 367 U. S., at 369; *United States* v. *Jorn, supra,* at 489 (STEWART, J., dissenting); cf. *Wade* v. *Hunter,* 336 U. S., at 692.

"But here the trial judge's banishment of Wagner from the proceedings was not done in bad faith in order to goad the respondent into requesting a mistrial or to prejudice his prospects for an acquittal.    As the Court of Appeals noted, Wagner 'was guilty of improper conduct' during his opening statement which 'may have justified disciplinary action,' 492 F. 2d, at 60–61.    Even accepting the appellate court's conclusion that the trial judge overreacted in expelling Wagner from the courtroom, *ibid.,* the court did not suggest, the respondent has not contended, and the record does not show that the judge's action was motivated by bad faith or undertaken to harass or prejudice the respondent."    424 U. S., at 611 (footnote omitted).

The exception was also unsuccessfully claimed in *Lee* v. *United States,* 432 U. S. 23.    In *Lee* the defendant had moved to dismiss a defective information prior to the attachment of jeopardy.    The trial court tentatively denied the motion, but then granted it at the close of the evidence.    Treating the motion to dismiss as a motion for a mistrial, this Court quoted extensively from *Dinitz* for the statement of the exception and then explained why the exception had not been established:

"It follows under *Dinitz* that there was no double jeopardy barrier to petitioner's retrial unless the judicial or prosecutorial error that prompted petitioner's motion was 'intended to provoke' the motion or was otherwise 'motivated by bad faith or undertaken to harass or prejudice' petitioner. *Supra,* at 33.    Here, two underlying errors are alleged: the prosecutor's failure to draft the information properly and the court's denial of the motion to dismiss prior to the attachment of jeopardy.    Neither error—even assuming the court's action could be so characterized—was the product of the kind of overreaching outlined in *Dinitz*.    The drafting error was at most an act of negligence, as prejudicial to the Government as to the defendant.    And the court's failure to postpone the taking of evidence until it could give full consideration to the defendant's motion, far from evidencing bad faith, was entirely reasonable in light of the last-minute timing of the motion and the failure of counsel to request a continuance or otherwise im-

As an initial matter, it is useful to explain why the defendant's retention of control over the course to be followed once serious prosecutorial error has occurred represents a reasonable accommodation of double jeopardy and prosecutorial interests. A defendant cannot be guaranteed both that there will be only one proceeding and that it will be free of error.[14] When unfair prejudice is injected into the proceeding by the prosecutor, the defendant may choose to continue the proceeding despite the taint and, if convicted, seek a reversal on appeal.[15] Or he may choose to abort the tainted proceeding and begin anew.[16] While it is true that prosecutorial error leaves the defendant with a "Hobson's choice,"[17] it is also true

---

press upon the court the importance to petitioner of not being placed in jeopardy on a defective charge." 432 U. S., at 33–34 (footnote omitted).

For other descriptions of the overreaching or harassment exception, see, e. g., *Arizona* v. *Washington, supra,* at 508 ("using the superior resources of the State to harass or to achieve a tactical advantage over the accused") (footnote omitted); *Illinois* v. *Somerville,* 410 U. S. 458, 464 (error "that would lend itself to prosecutorial manipulation"); *United States* v. *Jorn,* 400 U. S., at 485 ("prosecutorial . . . overreaching"); *id.,* at 485, n. 12 ("prosecutorial impropriety designed to avoid an acquittal"); *United States* v. *Tateo,* 377 U. S. 463, 468, n. 3 ("prosecutorial . . . impropriety . . . result[ing] from a fear that the jury was likely to acquit the accused").

[14] *United States* v. *Jorn,* 400 U. S., at 484.

[15] *Id.,* at 484, n. 11. See also *United States* v. *Tateo, supra,* at 474 (Goldberg, J., dissenting) ("Many juries acquit defendants after trials in which reversible error has been committed, and many experienced trial lawyers will forego a motion for a mistrial in favor of having his case decided by the jury").

[16] "[I]t is evident that when judicial or prosecutorial error seriously prejudices a defendant, he may have little interest in completing the trial and obtaining a verdict from the first jury. The defendant may reasonably conclude that a continuation of the tainted proceeding would result in a conviction followed by a lengthy appeal and, if a reversal is secured, by a second prosecution. In such circumstances, a defendant's mistrial request has objectives not unlike the interests served by the Double Jeopardy Clause—the avoidance of the anxiety, expense, and delay occasioned by multiple prosecutions." *United States* v. *Dinitz,* 424 U. S., at 608.

[17] *Id.,* at 609.

that the prosecutor suffers substantial costs no matter how the defendant exercises this choice. If the defendant consents to a mistrial, the prosecutor must go to the time, trouble, and expense of starting all over with the criminal prosecution. If the defendant chooses to continue the proceeding and preserve his objection for appeal, the prosecutor must continue to completion a proceeding in which a conviction may not be sustainable.[18]

The rationale for the exception to the general rule permitting retrial after a mistrial declared with the defendant's consent is illustrated by the situation in which the prosecutor commits prejudicial error with the intent to provoke a mistrial.[19] In this situation the defendant's choice to continue the tainted proceeding or to abort the proceeding and begin anew is inadequate to protect his double jeopardy interests. For, absent a bar to reprosecution, the defendant would simply play into the prosecutor's hands by moving for a mistrial. The defendant's other option—to continue the tainted proceeding—would be no option at all if, as we might expect given the prosecutor's intent, the prosecutorial error has virtually guaranteed conviction. There is no room in the balance of competing interests for this type of manipulation of the mistrial device. Or to put it another way, whereas we tolerate some incidental infringement upon a defendant's double jeopardy interests for the sake of society's interest in obtaining a verdict of guilt or innocence, when the prosecutor seeks to obtain an advantage by intentionally subverting double jeopardy interests, the balance invariably tips in favor of a bar to reprosecution.[20]

---

[18] See Westen & Drubel, Toward a General Theory of Double Jeopardy, 1978 S. Ct. Rev. 81, 101–102.

[19] The prosecutor might wish to provoke a mistrial "in order to shop for a more favorable trier of fact, or to correct deficiencies in [his] case, or to obtain an unwarranted preview of the defendant's evidence." *Id.*, at 94.

[20] Cf. *Brock* v. *North Carolina*, 344 U. S. 424, 429 (Frankfurter, J., concurring).

Today the Court once again recognizes that the exception properly encompasses the situation in which the prosecutor commits prejudicial error with the intent to provoke a mistrial. But the Court reaches out to limit the exception to that one situation,[21] rejecting the previous recognition that prosecutorial overreaching or harassment is also within the exception.[22]

---

[21] Compare *ante*, at 675–676 ("Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause"), with *ante*, at 676 ("Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion"), and *ante*, at 679 ("But we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial").

[22] The Court offers two reasons for cutting back on the exception. First, the Court states that "[t]he difficulty with the more general standards which would permit a broader exception than one merely based on intent is that they offer virtually no standards for their application." *Ante*, at 674. As I indicate in the text, however, some generality in the formula is a virtue and, in any event, meaningful and principled standards can be developed on a case-by-case basis that will not inhibit legitimate prosecution practices. See *infra*, at 689–692. Moreover, the general standards could hardly be more difficult to apply than the Court's subjective intent standard. On this point, it is noteworthy that JUSTICE REHNQUIST recently cited the exception for "prosecutorial overreaching or misconduct" to illustrate that double jeopardy analysis rests on "balancing and fairness" rather than " 'bright line' distinction[s]." *Finch* v. *United States*, 433 U. S. 676, 680 (dissenting opinion).

Second, the Court is "not sure that criminal defendants as a class would be aided" by a broader exception. *Ante*, at 676. If a mistrial will more frequently constitute a bar to reprosecution, the Court supposes that trial judges will tend to refuse the defendant's mistrial motion and permit the error to be corrected on appeal of the conviction, in which event there would be no bar to reprosecution. This reasoning is premised on the

Even if I agreed that the balance of competing interests tipped in favor of a bar to reprosecution only in the situation in which the prosecutor intended to provoke a mistrial, I would not subscribe to a standard that conditioned such a bar on the determination that the prosecutor harbored such intent when he committed prejudicial error. It is almost inconceivable[23] that a defendant could prove that the prosecutor's deliberate misconduct was motivated by an intent to provoke a mistrial instead of an intent simply to prejudice the defendant.[24] The defendant must shoulder a strong burden to establish a bar to reprosecution when he has consented to the mistrial, but the Court's subjective intent standard would eviscerate the exception.[25]

---

assumption that an appellate court that concluded not only that the defendant's mistrial motion should have been granted but also that the prosecutor intended to provoke a mistrial would not be obligated to bar reprosecution as well as reverse the conviction. The assumption is "irrational." *Commonwealth* v. *Potter*, 478 Pa. 251, 282, 386 A. 2d 918, 933 (1978) (Roberts, J.); see *id.*, at 259–260, 386 A. 2d, at 921–922 (Pomeroy, J.); Westen & Drubel, *supra*, at 103, 106, n. 130; see generally Note, Double Jeopardy: An Illusory Remedy for Governmental Overreaching at Trial, 29 Buffalo L. Rev. 759, 773–776 (1980).

[23] For an example of the kind of case that the Court's limited exception would cover, see *Commonwealth* v. *Warfield*, 424 Pa. 555, 227 A. 2d 177 (1967).

[24] "As an initial matter, I question the validity of the lower court's assumption that the Government in such cases tailors its misconduct to achieve one improper result as opposed to another. It is far more likely that in cases such as this, where the prosecution is concerned that the trial may result in an acquittal, that the Government engages in misconduct with the general purpose of prejudicing the defendant. In this case, for example, the Government stood to benefit from Dixon's misconduct, regardless of whether it resulted in a guilty verdict or a mistrial. Moreover, even if such subtle differences in motivation do exist, I suspect that a defendant seeking to prevent a retrial will seldom be able to prove the Government's actual motivation." *Green* v. *United States*, 451 U. S. 929, 931, n. 2 (MARSHALL, J., dissenting from denial of certiorari).

[25] Moreover, a standard that requires a prosecutor to take the stand to explain his trial strategy and his train of thought prior to making a serious error is of questionable wisdom.

A broader objection to the Court's limitation of the exception is that the rationale for the exception extends beyond the situation in which the prosecutor intends to provoke a mistrial. There are other situations in which the defendant's double jeopardy interests outweigh society's interest in obtaining a judgment on the merits even though the defendant has moved for a mistrial. For example, a prosecutor may be interested in putting the defendant through the embarrassment, expense, and ordeal of criminal proceedings even if he cannot obtain a conviction.[26] In such a case, with the purpose of harassing the defendant the prosecutor may commit repeated prejudicial errors and be indifferent between a mistrial or mistrials and an unsustainable conviction or convictions. Another example is when the prosecutor seeks to inject enough unfair prejudice into the trial to ensure a conviction but not so much as to cause a reversal of that conviction.[27] This kind of overreaching would not be covered by the Court's standard because, by hypothesis, the prosecutor's intent is to obtain a conviction, not to provoke a mistrial. Yet the defendant's choice—to continue the tainted proceeding or to abort it and begin anew—can be just as "hollow"[28] in this situation as when the prosecutor intends to provoke a mistrial.

To invoke the exception for overreaching, a court need not divine the exact motivation for the prosecutorial error. It is sufficient that the court is persuaded that egregious prosecutorial misconduct has rendered unmeaningful the defendant's choice to continue or to abort the proceeding. It is unnecessary and unwise to attempt to identify all the factors that

---

[26] See, e. g., *Shaw* v. *Garrison*, 328 F. Supp. 390 (ED La. 1971), aff'd, 467 F. 2d 113 (CA5 1972), cert. denied, 409 U. S. 1024.

[27] The defendant's successful argument for a bar to reprosecution in *United States* v. *Kessler*, 530 F. 2d 1246, 1253 (CA5 1976), was that "otherwise 'a prosecutor would have the option of first trying his case with inadmissible, prejudicial, and irrelevant evidence—that is, committing known error—in hopes of "getting away" with it, with the ability to retry the case properly if the first trial is aborted by a mistrial.'"

[28] *Ante*, at 673.

might inform the court's judgment, but several considerations follow from the rationale for recognizing the exception. First, because the exception is justified by the intolerance of intentional manipulation of the defendant's double jeopardy interests, a finding of deliberate misconduct normally would be a prerequisite to a reprosecution bar.[29] Second, because the defendant's option to abort the proceeding after prosecutorial misconduct would retain real meaning for the defendant in any case in which the trial was going badly for him,[30] normally a required finding would be that the prosecutorial error virtually eliminated, or at least substantially reduced, the probability of acquittal in a proceeding that was going badly for the government.[31] It should be apparent from these observations that only in a rare and compelling case will a mistrial declared at the request of the defendant or with his consent bar a retrial.

No one case, of course, is a proper vehicle for identifying the limits of the exception. The Court repeatedly has shunned inflexible standards in applying the comparable "manifest necessity" exception to the general rule that a de-

---

[29] Deliberate misconduct generally must be inferred from the objective evidence. The more egregious the prosecutorial error, and the harsher its impact on the defendant, the more readily the inference could be drawn.

[30] Justice Harlan aptly described the defendant's interest as "being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States* v. *Jorn,* 400 U. S., at 486. There is a corresponding societal interest against the historical and abhorrent practice of terminating trials whenever it appeared that the government's evidence was insufficient to convict. See *Arizona* v. *Washington,* 434 U. S., at 507–508.

[31] In a case in which the prosecutor's intent is primarily to harass the defendant, and only secondarily to obtain a conviction, this consideration would, of course, carry much less weight. The Double Jeopardy Clause protects a defendant not only from "declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" but also from "[h]arassment of an accused by successive prosecutions." *Downum* v. *United States,* 372 U. S. 734, 736.

fendant is entitled to go to final judgment before the initial tribunal.[32] The value of the overreaching standard, like "[t]he value of the [manifest necessity standard,] thus lies in [its] capacity for informed application under widely different circumstances without injury to defendants or to the public interest." *Wade* v. *Hunter*, 336 U. S. 684, 691. The inexactitude of the standard used to protect defendants in the exceptional case surely should not concern the Court any more than the equally ill-defined formula used to protect prosecutors in the exceptional case. The scarcity of cases in which the exception has been invoked[33] counsels against preempting the judgment reflected in our decisions that an exception for overreaching or harassment should remain available for the rare case in which it may be needed.[34] We

---

[32] See especially the Court's opinion in *Illinois* v. *Somerville*, 410 U. S. 458. JUSTICE MARSHALL criticized the majority in that case for "abandon[ing] th[e] tradition [of elaboration of rules which give increasing guidance as case after case is decided] and [adopting] a new balancing test whose elements are stated on such a high level of abstraction as to give judges virtually no guidance at all in deciding subsequent cases." *Id.*, at 483 (dissenting opinion).

[33] The petitioner and the United States as *amicus curiae* cite only a few cases in which the exception has been invoked to bar reprosecution. One commentator discovered only two cases in which a Federal Court of Appeals barred reprosecution. Note, Double Jeopardy: An Illusory Remedy for Governmental Overreaching at Trial, 29 Buffalo L. Rev. 759, 760, n. 16 (1980).

[34] "We should not be so unmindful, even when constitutional questions are involved, of the principle of *stare decisis*, by whose circumspect observance the wisdom of this Court as an institution transcending the moment can alone be brought to bear on the difficult problems that confront us. . . . Furthermore, we are not here called upon to weigh considerations generated by changing concepts as to minimum standards of fairness, which interpretation of the Due Process Clause inevitably requires. Instead, the defense of double jeopardy is involved, whose contours are the product of history. In this situation the passage of time is not enough, and the conviction borne to the mind of the rightness of an overturning decision must surely be of a highly compelling quality to justify overruling a well-estab-

should simply decide this case on its facts, as we did in *United States* v. *Dinitz* and *Lee* v. *United States*,[35] and thereby continue to give meaning to the "abstract formula"[36] in the context of actual cases.

## II

The petitioner,[37] and the state court that denied the respondent's motion to dismiss,[38] have correctly pointed out that it is unnecessary to cut back on the recognized exception, or even to disavow the most liberal construction given it by the federal courts, to conclude that the exception has not been established on the facts of this case. The isolated prosecutorial error occurred early in the trial, too early to determine whether the case was going badly for the prosecution. If anyone was being harassed at that time, it was the prosecutor, who was frustrated by improper defense objections in her attempt to rehabilitate her witness. The gist of the comment that the respondent was a "crook" could fairly have been elicited from the witness, since defense counsel injected the respondent's past alleged improprieties into the trial by questioning the witness about his bias towards the

---

lished precedent when we are presented with no considerations fairly deemed to have been wanting to those who preceded us." *Green* v. *United States*, 355 U. S. 184, 215 (Frankfurter, J., dissenting).

[35] See n. 13, *supra*.

[36] *Wade* v. *Hunter*, 336 U. S., at 691.

[37] "The Oregon Court of Appeals' holding that retrial of this case was barred on double jeopardy grounds is erroneous by any standard of prosecutorial overreaching which the lower courts of this country had previously derived from the decisions of this Court." Brief for Petitioner 43.

[38] "I have reviewed the transcript and the wording, as put, and I would agree that the question was improper as put. I do not find, however, that it constitutes bad faith or was intentional impropriety. The question of whether or not it constitutes overreaching is one of those gray areas where we have to determine what 'overreaching' means, and in looking to the case which the defense has cited, *United States* v. *Kessler*, prosecutorial overreaching is there defined as being such as must have been a result of gross

defendant. The comment therefore could not have injected the kind of prejudice that would render unmeaningful the defendant's option to proceed with the trial.

Because the present case quite clearly does not come within the recognized exception, I join the Court's judgment. I cannot, however, join the Court's opinion because it totally fails to justify its disavowal of the Court's precedents.

negligence or intentional misconduct which prejudiced the defendant so that he cannot receive a fair trial, and I wouldn't find that the overreaching or the erroneous conduct in this matter reaches that degree of aggravation. I don't think it amounted to gross negligence or intentional misconduct." App. 53.