SCHOTT, Judge,
concurring:
The Fifth Amendment, to the United States Constitution protects a defendant from being tried a second time for the same offense, i.e., a defendant cannot be exposed to double jeopardy. However, when the court orders a mistrial the defendant is generally not considered to have been placed in jeopardy and may be tried again. C.Cr.P. Art. 591. This is so when the mistrial is ordered on motion of the defendant when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. C.Cr.P. Art. 775. A narrow exception to this rule was recognized by the United States Supreme Court in Oregon v. Kennedy, 456 U.S. 667,102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) to cover the situation “where governmental conduct in question is intended to ‘goad’ the defendant into moving for *991 a mistrial” in which instance the defendant may raise his fifth amendment double jeopardy claim even though he moved for the mistrial.
In Kennedy the defendant tried to prove that after a key state witness had been discredited on cross examination, the prosecutor deliberately asked an inflamatory question on re-direct which was designed to force the defendant to move for a mistrial. In this way the government would have the trial aborted so that it could have a second chance to try defendant. The facts of the instant case cannot support the application of the same principle. The prosecutorial misconduct which is alleged to have been intended to goad defendant into moving for a mistrial was the previous, pre-trial refusal to produce the police report and the photograph and the ongoing refusal to produce the Johnson tape. The trial judge reasoned that the state realized during trial that its case was weak, consisting for the most part of the testimony of conspirators with defendant several of whom had been promised immunity or who were hoping for leniency in exchange for cooperating with the state. The state’s fears were compounded when Johnson’s testimony was impeached by the use of his previous statement. As the trial judge expressed it:
“... the State must have calculated that the effect of impeaching any State’s witness would be to raise the probability of an acquittal higher than the State wished to chance. This calculation underlay the State’s attempt to suppress the Brady material which came to light during defendant’s trial. When Johnson’s March 26, 1985, statement was discovered to have been suppressed, the State must have calculated the probability of an acquittal with Johnson and Kranz impeached, and other possible weaknesses of the State’s case unknown to defendant and to the Court, and decided to try for another chance at convicting defendant.”
The fallacy here is that the prosecutorial misconduct had already occurred in the form of withholding information before trial. Such misconduct cannot be equated with an act of misconduct deliberately committed by a prosecutor during trial to rescue himself from an acquittal.
Furthermore, it is illogical to conclude that the prosecutor realizing his case was floundering, goaded defendant to move for a mistrial so he, the prosecutor, could have another chance to try defendant. His second trial would necessarily be weaker, not stronger. In the first trial he had succeeded in holding back on the Johnson tape until the time of Johnson’s cross examina-' tion. At the second trial defendant would have the full use of all of this previously withheld so called Brady material. Instead of goading defendant to move for a mistrial at this point a smart prosecutor would have preferred to carry the first trial to a conclusion.
I have concluded that no basis in fact or logic supports the application of the Kennedy exception to this case and concur in remanding the case to the trial court.