

# NUMBER 13-09-00219-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### EX PARTE: JOSE DAVID FLORES CEDILLO

### On appeal from the 275th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Rodriguez

This is an interlocutory appeal from a pre-trial application for writ of habeas corpus

denied by the trial court. By one issue,[1] relator Jose David Flores Cedillo complains that

---

[1]In his statement of issues, Cedillo outlines the following five arguments:

Does the State act intentionally when it was ordered three times not to mention extraneous offenses, and yet does so during opening statement, minutes after the last order?

Can a trial court avoid granting habeas relief, merely based on the State's self-serving denials to cause a mistrial (especially when the State cannot substantively explain its conduct)?

Does an order need to be in writing in order to be effective?

the trial court erred in denying his application because double jeopardy barred his retrial. We affirm.

## I. Background

Cedillo was indicted for injury to a child and murder. Our review of the record reveals that, in the time between indictment and trial, an issue arose over certain alleged extraneous offenses committed by Cedillo. Cedillo filed a motion in limine, in which he sought to prevent the State from introducing evidence of "extraneous crime[s] or misconduct." Although we find no ruling in the record by the trial court on Cedillo's motion in limine, the trial court twice instructed the prosecutor, on the record in pre-trial proceedings, to refrain from delving into extraneous offenses without first approaching the bench for a ruling.

Cedillo pleaded not guilty to both indicted counts, and the case proceeded to a jury trial. During his opening statement, the prosecutor told the jury that:

> [T]here was some talk about self-defense at voir dire which wasn't evidence. As the Judge told you before and what I say now isn't evidence nor what the Defense counsel is going to tell you later on, which is probably going to be around the same theory of self-defense, is not evidence. That is not evidence either.
>
> . . . .
>
> Now, what is the evidence going to show? The evidence is going to show that [the victim] was a hard-working lady and she was honest. She was good. She was not violent and she was decent. That's what the evidence is going to show.

Does the concept of bully *ipso facto* implicate extraneous offenses?

For purposes of criminal law, does a prosecutor's opening statement implicate the double jeopardy clause?

All five are properly characterized as sub-issues of the general double jeopardy issue we address in our opinion. *See* Tex. R. App. P. 47.1.

The evidence is going to show that this Defendant, who had a reputation for being a bully, bad mouth and —

At that point, Cedillo objected that the prosecutor's statement went to Cedillo's reputation and asked for a hearing outside the presence of the jury. After the jury left the courtroom, Cedillo moved for a mistrial on the basis that the prosecutor's statement that Cedillo has a reputation for being a bully was a reference to extraneous conduct and bad acts and was therefore in violation of the motion in limine.[2] The trial court granted the motion for mistrial and dismissed the jury.

Thereafter, Cedillo filed an application for writ of habeas corpus, arguing that, as a result of the prosecutor's comment during opening statement, his retrial was barred by double jeopardy. The trial court held a hearing on the application. At the hearing, the prosecutor testified that he could not recall any express rulings on Cedillo's motion in limine but that he remembered being instructed by the trial court to not get into extraneous offenses without first approaching the bench. The prosecutor further testified that he did not believe the judge would grant a mistrial if he used the word bully; that he was pleased with the jury that was chosen for the trial; that he believed his comment concerned only character traits and reputation rather than the prohibited extraneous offenses evidence; and that he did not make the bully comment because he wanted a mistrial in order to "get rid" of the case.

Cedillo's trial counsel also testified at the hearing. He stated that the trial court had orally granted the motion in limine during an off-the-record conference in chambers.

---

[2]Cedillo also complained that the comment violated the State's notice of intent to use extraneous offenses. However, we find no such notice in the record before us that was on file with the court at the time of trial. The only such notice by the State in the record was filed three days after the mistrial was granted by the trial court.

Cedillo's counsel testified that, in addition to the two on-record instructions to the prosecutor, the trial judge also instructed the prosecutor at the in-chambers conference to avoid extraneous offenses unless he first approached the bench. Counsel further stated that he believed that the prosecutor's violation of the trial court's "numerous" instructions on the matter was evidence that his conduct was intentional. The trial court issued an order denying Cedillo's application for writ of habeas corpus, and this interlocutory appeal ensued. *See Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005) (holding that "denial of relief on a pretrial writ of habeas corpus may be appealed immediately").

## II. STANDARD OF REVIEW AND APPLICABLE LAW

"In a habeas corpus hearing, the burden of proof is on the petitioner." *State v. Cabrera*, 24 S.W.3d 528, 530 (Tex. App.–Corpus Christi 2000, pet. ref'd). We review a trial court's decision to grant or deny a writ of habeas corpus for abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). In reviewing the facts, we view the evidence in the light most favorable to the ruling. *Cabrera*, 24 S.W.3d at 530.

The Double Jeopardy Clauses of the United States and Texas Constitutions provide that no person shall twice be put in jeopardy of life or liberty for the same offense. *See* U.S. CONST. amend V.; TEX. CONST. art. 1, § 14. If a double jeopardy complaint is made on the basis of prosecutorial misconduct that caused a mistrial, we review the prosecutor's actions under the standard enunciated in *Oregon v. Kennedy*, 456 U.S. 667 (1982). *See Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. 2007). "[T]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was

intended to provoke the defendant into moving for a mistrial." *Kennedy*, 456 U.S. at 679. In other words, relief is appropriate "[o]nly where the governmental conduct in question [was] intended to 'goad' the defendant into" so moving. *Id.* at 676.

In determining whether the prosecutor intended to provoke or goad the defendant into moving for a mistrial, we look to the objective facts and circumstances surrounding the prosecutor's conduct. *Ex parte Wheeler*, 203 S.W.3d at 323; *see Kennedy*, 456 U.S. at 675. To that end, the following is a non-exclusive list of objective factors we consider in making our determination:

1) Was the misconduct a reaction to abort a trial that was "going badly for the State?" In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?

2) Was the misconduct repeated despite admonitions from the trial court?

3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?

4) Was the conduct "clearly erroneous"?

5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety?

6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional . . . misconduct?

*Ex parte Wheeler*, 203 S.W.3d at 323-24.

### III. DISCUSSION

By one issue, Cedillo complains that the trial court erred in denying his application for writ of habeas corpus because double jeopardy barred his retrial after the prosecutor commented during his opening statement that Cedillo is a bully. Cedillo points to the trial

5

court's instructions to the prosecutor not to mention extraneous offenses without first approaching the bench and contends that the prosecutor's bully comment violated those instructions. Citing a concurring opinion in *Ex parte Masonheimer*, Cedillo argues that "the objective facts and circumstances clearly demonstrate that the prosecutor intentionally acted improperly." *See* 220 S.W.3d 494, 509-10 (Tex. Crim. App. 2007) (Meyers, J., concurring) ("My reading of *Oregon v. Kennedy* is that if the State's intentional actions goad the defendant into requesting a mistrial, then retrial is jeopardy-barred. Rather than considering whether the State actually wanted a mistrial, we look to see if the improper conduct of the State was intentional."). However, Justice Meyers's concurring opinion is not the controlling law on the issue before us. Rather, Texas law is clear that the burden was on Cedillo to prove that, by his comment, the prosecutor intended to provoke or goad Cedillo into moving for a mistrial. *See Ex parte Lewis*, 219 S.W.3d at 371; *Cabrera*, 24 S.W.3d at 530. Cedillo did not meet his burden.

Here, the prosecutor testified at the hearing on Cedillo's application that he did not believe the judge would grant a mistrial because he referred to Cedillo's reputation as a bully. He further testified that he "liked" the jury that was chosen and that he did not make the comment to cause a mistrial and "get rid" of the case. *See Ex parte Wheeler*, 203 S.W.3d at 324 (holding that one factor in our determination is whether the trial was "going badly" for the State). Even were we to concede that the prosecutor violated the trial court's instructions regarding the mentioning of extraneous offenses and/or conduct and that his comment could be characterized as misconduct, that misconduct was not repeated. *See id.* Moreover, the prosecutor provided a "good faith" and "legally and factually plausible" explanation for his comment when he testified at the hearing on Cedillo's application that

6

he believed the bully comment went to character and reputation and not to extraneous offenses. *See id.*; *see also* TEX. R. EVID. 404(a), (b) (providing distinct rules for character and character trait evidence versus evidence of extraneous offenses or bad acts). Similarly, the prosecutor's comment was arguably not "clearly erroneous" because his reference to Cedillo's reputation did not necessarily contravene the motion in limine or the trial court's instructions regarding extraneous offenses and other bad acts, none of which mentioned or referred to reputation or character trait evidence. *See Ex parte Wheeler*, 203 S.W.3d at 324.

In sum, the objective facts and circumstances demonstrate that the prosecutor did not intend to goad Cedillo into moving for a mistrial. *See Kennedy*, 456 U.S. at 675. Viewing the evidence in the light most favorable to the ruling, we conclude that the trial court did not abuse its discretion in denying Cedillo's application for writ of habeas corpus.[3] *See Ex parte Wheeler*, 203 S.W.3d at 324; *Cabrera*, 24 S.W.3d at 530. Cedillo's sole issue is overruled.

## IV. CONCLUSION

The order of the trial court denying Cedillo's writ of habeas corpus is affirmed.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
27th day of May, 2010.

---

[3]Having concluded that the trial court correctly denied Cedillo's application on the basis that he failed to prove intentional goading by the prosecutor, *see Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. 2007), we need not reach Cedillo's additional sub-issues outlined in our previous footnote. *See* TEX. R. APP. P. 47.1.