**UNITED STATES of America,**

v.

**THE LaROUCHE CAMPAIGN, Independent Democrats for LaRouche, Campaigner Publications, Inc., Caucus Distributors, Inc., Lyndon H. LaRouche, Paul Goldstein, Jeffrey Steinberg, Michelle Steinberg, Robert Greenberg, Edward Spannaus, John Scialdone, National Caucus of Labor Committees, Defendants.**

**Crim. No. 86–323–K.**

United States District Court,
D. Massachusetts.

Aug. 11, 1988.

Odin P. Anderson, Anderson & Associates, P.C., Boston, Mass., for Lyndon LaRouche, Jr.

Michael W. Reilly, Hausserman, Davison & Shattuck, Boston, Mass., for Nat. Caucus of Labor Committees.

Daniel S. Alcorn, Fensterwald & Alcorn, Arlington, Va., for Paul Goldstein.

Matthew H. Feinberg, Boston, Mass., for Caucus Distributors, Inc. and Campaigner Publications, Inc.

William B. Moffitt, William B. Moffitt & Associates, Alexandria, Va., for Jeffrey Steinberg.

Thomas Shapiro, Shapiro & Grace, Boston, Mass., for The LaRouche Campaign and Independent Democrats for LaRouche.

Mayer Morganroth, Southfield, Mich., for Edward Spannaus.

Robert F. Collins, Braintree, Mass., for Robert Greenberg.

James E. McCall, Boston, Mass., for John Scialdone.

William Cummings, Alexandria, Va., for Michelle Steinberg.

## MEMORANDUM AND ORDER

KEETON, District Judge.

Before the court are defendants' Motion to Dismiss and Memorandum in Support of Defendants' Motion to Dismiss on Grounds of Double Jeopardy (Docket No. 1640) and the government's opposition (Docket No. 1650).

On May 2, 1988, the jury in this case returned from a several-week break in tes-

timony necessitated by hearings on defense motions alleging violation of disclosure obligations by the government. Upon the jury's return, the court conducted a voir dire in order to determine whether the jurors had been exposed to any publicity about the case during the period they were not sitting and also to determine whether the fact that the trial was by this time expected to last beyond mid-July would cause any hardship on the jurors. The court made individual inquiries of the five jurors who responded affirmatively to the inquiry about hardship: Costa, Graves, Dashawetz, Wilkins, and Montville. Transcript Vol. 90, pp. 32–52. All five indicated that the trial was either a current hardship on them or would become a hardship if it lasted beyond mid-July. The court excused juror Wilkins without objection from any party. *Id.* at 133–35. On May 2 and May 3 the court heard arguments from counsel regarding whether the hardship on the remaining four jurors necessitated their excusal and also entertained discussion regarding the possibility of severing some part of the case and declaring a mistrial only as to that part in the hope that the remaining portion could be completed by mid-July.

When final positions were announced, no party was requesting a severance. All defendants joined in a motion, over the government's objection, for the excusal of the remaining four jurors who expressed hardship. The court took the matter under advisement overnight on May 3. Transcript Vol. 91, p. 97.

On the morning of May 4, 1988, the court announced its view that the standard for excusal of sitting jurors is that they may be excused only if they "become or are found to be unable or disqualified to perform their duties," pursuant to Fed.R.Crim. P. 24(c), and that hardship alone does not justify excusal unless it rises to that level. Transcript Vol. 92, p. 3. The court then determined that it would not be proper to proceed with a trial that would last well into the fall without disclosing the revised estimate of length of trial to the jurors. *Id.* at 10. Also the court found that, once that disclosure was made, the hardships and anticipated hardships on the four jurors were such that "these jurors not only will be unable to continue to perform their duties as fair and impartial jurors [once the trial extends past mid-July] but that they are from this point forward unable to do so." *Id.* at 11. The court then excused the four additional jurors. *Id.* After the defendants rejected the government's offer to stipulate to a ten-person jury pursuant to Fed.R.Crim.P. 23(b), the court declared a mistrial. *Id.* at 14–15.

The Supreme Court in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), explained that two different standards apply when evaluating post-mistrial double jeopardy motions, depending on the position taken by the defendant with respect to the granting of the mistrial:

> Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the "manifest necessity" standard first enunciated in Justice Story's opinion for the Court in *United States v. Perez,* 9 Wheat. 579, 580 [6 L.Ed. 165] (1824)....

> But in the case of a mistrial declared at the behest of the defendant, quite different principles come into play....

> . . . .

> A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978).

*Id.* at 672, 676, 102 S.Ct. at 2087, 2090.

The government argues that the "deliberate election" standard should be applied in this case, rather than the "manifest necessity" standard, because the mistrial resulted from the court's excusal of the four jurors on the joint motion of all defendants, which motion was made with the explicit recognition that the result would be a mistrial. The defendants contend that they should not be held to have made a "deliberate election" to accept a mistrial because a mistrial was unavoidable.

I conclude that it is unnecessary to decide whether the "deliberate election" standard announced in *Kennedy* should be applied because even the more rigorous "manifest necessity" standard is satisfied here. Because none of the defendants wanted to attempt to continue to verdict as part of a smaller trial and none of the defendants was willing to proceed with ten jurors, mistrial became manifestly necessary when the court made the findings that the four jurors would not be able to perform their duties impartially once they learned the expected length of the trial. Those fact findings remain effective for two independent reasons.

First, defendants are now precluded from challenging (and, in the submissions before me, no defendant has challenged) my findings with respect to the disqualification of the four jurors because defendants urged the court to find each of them disqualified, over the objection of the government, with the explicit understanding that the necessary result would be a mistrial. In other words, defendants did make an election that is relevant to a determination that the "manifest necessity" standard is satisfied in this case, perhaps not in the broad sense of choosing to forego their right to continue before that jury, but at least in the narrow sense of choosing to contend that the jurors were disqualified.

Second, and more importantly, the four jurors were in fact disqualified. The court so determined on the evidence, including the answers of the jurors during voir dire of May 2, 1988. Counsel for the government argued vigorously that measures could be taken which would eliminate or reduce the hardship on certain jurors, such as extending the hours during which the jury was hearing testimony to advance the end of the trial and/or recessing the trial for several weeks in July–August to accommodate the vacation schedule of two jurors and allow another juror to undergo already-postponed surgery. The court considered these possibilities but concluded that no set of measures would ensure, or even make likely, that the trial could be completed before the number of jurors

dropped below twelve. The prosecutor also argued that although the four jurors either were experiencing hardship or would experience hardship once the trial extended beyond mid-July, those hardships were not so severe as to cause the jurors to be disqualified. The court rejected this contention and found that, despite the explicit statements of some of the jurors that they believed they remained impartial, credited by the court, "jurors required to serve in the circumstances of hardship that I have found ... would find it simply humanly impossible to maintain that dispassionate sense of impartiality and also attentiveness to the trial proceedings throughout the period that they were in trial" that is essential to qualification as jurors. Transcript Vol. 92, p. 11.

Defendants contend that the excusal of the jurors would not have been necessary but for delays caused by government misconduct and that the "manifest necessity" standard is not satisfied when the necessity is created by prosecutorial error, misconduct or overreaching. The government disputes both contentions and points out that the Supreme Court in *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed. 2d 425 (1973), held that a prosecutor's error in drafting an indictment provided manifest necessity for a mistrial. I need not decide whether the government's misconduct in this case is the type that, if it caused a mistrial, could be considered as having a bearing upon "manifest necessity," because I have found as a fact that the government misconduct in this case did not cause or in any way contribute to causing the mistrial. As stated in finding number 155 of the Findings of Fact filed on August 10, 1988:

> Even if there had been no violation of disclosure obligations and no hearing to determine the scope and effect of any violation, a mistrial would have been necessary. It had been foreordained by the fact that the length of the case drastically exceeded the expectations of the court and the jury at the time of jury selection. The discrepancy between the court's expectations regarding length of trial at

the time of jury selection and the court's expectations by May 2, 1988 was greatly increased by defendants' strategy of defense, which was quite properly withheld from the court by defense counsel at the time the court required disclosures from the government and invited (but did not require) disclosures from defense counsel in order to determine what the jury panel should be told about length of trial during jury selection.

Defendants argue that it was not merely the expanded length of trial that caused the jurors' excusal:

> In a real sense, the jurors' hardships were not merely a function of the trial's impact upon their long range plans. More immediately, the prosecutor's misconduct had resulted in the more immediate feelings of anguish, confusion and anger which formed part of the basis for the Court's findings of present hardship disabilities sufficient to declare a mistrial.

Defendants' Double Jeopardy Memorandum (Docket No. 1640) at 10.

There is no doubt that the delay, for which the jury had no explanation at the time of the voir dire and some of which was caused by government misconduct, did accelerate development of the emotional reactions expressed by the jurors. That problem, however, was largely dealt with when the jury was informed after the voir dire of the reason for the delay. Moreover, I find that the deeper problem was that similar emotions of resentment and frustration were certain to develop when the jurors learned that the trial was likely to continue well into the fall.

Defendants argue that the delay between the jury empanelment and the start of trial, during which co-defendant Frankhauser was tried, should be attributed to government misconduct and held to have caused the mistrial. It is defendants' contention that it was improper for the prosecutor to vigorously oppose their motions for severance from Frankhauser and then to reverse his position on the eve of trial, knowing that it would postpone the starting date of a lengthy trial with an already-empaneled jury. The government responds that last minute developments had an impact on the merit of the defendants' severance motions and that defendants continued to press for severance after the court explicitly observed the fact that such a severance would delay the start of the main trial. (The court also took note of the possibility of trying the Frankhauser case after the main trial, but the government and some defendants objected to that proposal, and no defendant other than Frankhauser objected to the court's order that Frankhauser be tried first. In these circumstances, the court did not press the option of trying the other defendants first.) In addition, the severance was granted after a stated finding by the court that the already-empaneled jury would not only have to serve less actual time, but that it was likely that, even with the delayed start, they would conclude their service by a date no later than would have been the completion date of the entire trial had Frankhauser been tried with the other defendants. Transcript Vol. 14, p. 187; Transcript Vol. 15, pp. 52, 64.

I find that the delay incident to the Frankhauser severance was not a but-for cause of the mistrial in this case for each of two independent reasons: (1) The Frankhauser trial and this trial in succession would have lasted for fewer total weeks than a trial of both cases together and (2) this trial (even severed from the Frankhauser trial) was foreordained to last more than a year for reasons independent of any government misconduct. Therefore, even if there had been no last-minute severance of Frankhauser and the trial had begun in October, 1987, it would not have concluded before October, 1988, and the mistrial still would have been necessary.

Defendants contend that a week of the court's time was spent dealing with issues related to the so-called "North telex" and the related "Lewis–Howard–Tucker memorandum," and that this delay helped cause the mistrial and should be attributed to government misconduct. I reject defendants' contention for two reasons.

First, there is no basis for attributing the time spent on this matter to prosecutorial misconduct. The inquiry into the Lewis–Howard–Tucker matter yielded no *Brady* material. Defendants argue that the Lewis–Howard–Tucker documents should nevertheless have been produced pretrial because *"regardless* of any ultimate question of the relevance of these particular documents or discoverable information flowing from them, they were unquestionably called for by defendants' discovery agreements with the prosecutor...." Defendants' Double Jeopardy Memorandum at 8. However, the only discovery *agreement,* as opposed to discovery *request,* cited by defendants is an agreement with respect to defendants' Motion for Disclosure of Confidential Informants, Informers, Cooperating Individuals, Planted Infiltrators and Agents–Provocateurs, stating:

> Resolved only as to witnesses or *Brady* material. The government will furnish defense counsel with information concerning the person's relationship with any government agencies or departments.

Exhibit QQ, p. 76. This "agreement" did not obligate the government to disclose any information beyond that which it was already obligated to disclose by law. Those disclosure obligations were not violated with respect to the Lewis–Howard–Tucker materials.

Second, I find that the week's delay alleged by defendants did not contribute to the necessity for a mistrial. As my findings above make clear, one week more or less would have had no effect on the possibility of completing the trial with twelve jurors, even when added to the delay caused by the government with respect to the Emerson matter and the delay allegedly caused by the government with respect to the Frankhauser severance.

In summary, I conclude that manifest necessity existed for the mistrial and that the government misconduct that I have found in the Findings of Fact filed on August 10, 1988, is irrelevant to the manifest necessity inquiry because the misconduct was not a but-for cause of the mistrial and did not in any way contribute in fact to the necessity for mistrial.

Defendants have asserted a further argument—that the government intended (or that it should be held, by an objective standard, as if it intended) to cause a mistrial and to goad the defendants into seeking a mistrial. The record before me is devoid of any support for any finding of fact (by either a subjective or an objective standard) essential to this contention. I find as a fact that the prosecution in this case did not, at any point, act with intent to cause a mistrial or to goad the defendants into seeking a mistrial. I find also, as a fact, that by an objective standard of an ordinarily prudent person in the position of the prosecution, it cannot be said that the prosecution should have foreseen that its conduct would cause or contribute to a mistrial or goad the defendants into seeking a mistrial. The defense arguments to the contrary have no merit whatsoever.

### ORDER

For the foregoing reasons, it is ORDERED:

Defendants' Motion to Dismiss on Grounds of Double Jeopardy (Docket No. 1640) is denied.