KLEES, Judge.
On July 9, 1987, the defendant Darryl J. Washington was indicted for the second degree murder of David Bradford. He was subsequently arraigned and pled not guilty. His first trial, held on March 16, 1988, ended in a mistrial. On April 11th, he filed a motion to quash the indictment. On April 12th, he again waived his right to a jury, the parties stipulated to the testimony produced at the first trial, and the trial court found him guilty of manslaughter. His motion to quash the indictment was denied on June 15th. He was sentenced on July 22nd to serve fifteen years at hard labor, and his motion for appeal was filed on that date.
FACTS:
At approximately 11:00 p.m. on August 2, 1985, David Bradford was shot to death at a bar located at the corner of Market and Chippewa Streets. Police officers responding to the shooting found the victim lying outside the front door of the bar, no weapon was found near the body. It was determined that Bradford had been shot four times, with one shot being the fatal wound. Bradford’s blood alcohol content was found to be .28 per cent, he had traces of cocaine in his body and his arms showed recent track marks.
Yolanda Woodworth, Bradford’s girlfriend, testified that she was in the bar drinking when Bradford entered, looking for her. She testified Bradford was stopped by the defendant Darryl Washington, who told him something which she could not hear. Washington and Bradford then got into a fight. Ms. Woodworth grabbed a bottle and attempted to hit Washington, but she was unsure if she he hit him. Ms. Woodworth testified Bradford then walked outside the bar. She testified she heard some woman yell, “Get the M. F.”, and then she saw Washington get a gun and follow Bradford out of the bar. She heard gunshots, ran outside, found Bradford lying on the ground, and saw Washington walking away down Chippewa Street. She testified she reentered the bar to call the police, but the barmaid hampered her efforts to do so. However, the police were notified.
*1362 John Coleman and Alberta Hebert were also at the bar at the time of the shooting. They testified Washington and Bradford began fighting inside the bar. The fight moved outside, and the crowd in the bar followed. Both testified that Washington reentered the bar and then came back out carrying a gun. They both witnessed Washington shoot Bradford repeatedly and then walk away from the scene. Both testified they did not see Bradford with a weapon.
Ernestine Taylor, the barmaid and Washington’s girlfriend, testified that Bradford and his friends entered the bar and Bradford started the fight with Washington. She testified Bradford and his friends had beaten Washington badly, and then Bradford walked out the door. She testified Washington then went to the door and was confronted by Bradford who had reentered. She testified Bradford grabbed a chair, raised it over his head, and attempted to hit Washington with it. However, before he could do so, Washington shot him. Bradford did not drop the chair after the first shot, and Washington then shot him again. Bradford then dropped the chair and fell backward out the door. However, this testimony differed greatly with a statement given to the police on the night of the shooting. In that statement, she indicated she did not see the shooting, which occurred outside, and that “Darryl Jackson” shot Bradford.

Errors Patent

A review of the record for errors patent reveals there are none.

Assignment of Error

By his sole assignment of error, the appellant contends the trial court erred by denying his motion to quash the indictment. He contends the intentional failure of the State to produce the statement of Ms. Taylor prior to trial sabotaged his right to a fair trial.
Prior to the first trial, prosecutor Joseph Iuzzolino told Shelley Vix, defense counsel from the Loyola Law Clinic, he had interviewed Ms. Taylor and he was going to impeach her testimony with a statement she had given to the police. When Ms. Vix asked to see the statement, Mr. Iuzzolino refused to give it to her. However, Ms. Vix testified she did not know the contents of the statement. At trial when Mr. Iuzzo-lino used the statement to impeach Ms. Taylor, the defense learned of the statement’s actual contents, which contradicted her trial testimony. At that point, the defense objected, arguing it had requested any exculpatory evidence in its bill of particulars, and the State replied it had none. The prosecutor denied the statement was exculpatory, and the court viewed the statement. The trial court then noted the statement was exculpatory in that it named “Darryl Jackson” as the perpetrator. Mr. Iuzzolino then stated he thought “Darryl Jackson” was “Darryl Washington” because Washington’s arrest register listed the aunt he lived with as having Jackson as her last name. The court replied it believed there was other exculpatory information in the statement. It stated it did not believe the State intentionally sought to suppress the statement. However, the court took note of the contents of the statement and then gave the defense the option of having the statement excluded or having a mistrial declared. When the defense motion for both was denied the defense then moved for mistrial which was granted.
On April 11th, the defense filed a motion to quash the indictment, contending that the State wilfully withheld the statement and then goaded the defense into asking for a mistrial, thereby making a second trial violative of the defendant’s right against double jeopardy. This motion was not heard until after the second trial. On the date of the second trial the defense entered into an agreement whereby the case would be submitted to the court on the evidence adduced at the March 16th trial and whereby the defense agreed not to produce any other witnesses. The court then found the appellant guilty of the lesser verdict of manslaughter.
*1363 At the hearing on the motion to quash, Ms. Vix testified as to the exchange between her and Mr. Iuzzolino prior to the first trial. She testified the decision to accept the agreement not to present any additional testimony was based upon trial strategy, noting: “We felt that it was the only way to preserve the effective cross-examination that had existed because the defense had already played their hand to the State’s witnesses.” She admitted the defense knew of the statement’s existence and that it differed from the proposed testimony of Ms. Taylor before Ms. Taylor was called to the stand, and she admitted the defense did not ask the court to order the production of the statement prior to the start of trial. She also admitted the identity of the perpetrator was not an issue in the case, but rather self-defense was their sole defense. The State called Mr. Iuzzoli-no, who basically testified he did not produce the statement because he did not think it was exculpatory. He testified he was so amazed by the fact that Ms. Taylor’s testimony was going to be contradictory to the statement she gave to the police that he “missed” the exculpatory nature of the statement.
The appellant is correct in his assertion that the statement should have been produced prior to the first trial. C.Cr.P. art. 718 provides in part that a defendant may have access to any materials “which are favorable to the defendant and relevant to the issue of guilt or punishment.” In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court held the Fourteenth Amendment mandates the prosecution must disclose to the defense evidence favorable to he defendant if such evidence is material to his guilt or punishment and if the evidence, if suppressed, would deprive him of a fair trial. Materiality, as defined by United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), is shown where there is a “reasonable probability” that the outcome of the proceeding would have been different if the evidence had been disclosed to the defense. See also State v. Rosiere, 488 So.2d 965 (La.1986); State v. Cole, 530 So.2d 652 (La.App. 4th Cir.1988); State v. Williams, 478 So.2d 983 (La.App. 4th Cir.1985), writ den. 483 So.2d 1019 (La.1986) and 488 So.2d 1029 (La.1986).
The statement, which is contained in the record, names someone named “Darryl Jackson”, who Ms. Taylor appears not to know, as the man who shot Bradford. As such, it was definitely exculpatory and material to the appellant’s guilt, and the trial court properly declared a mistrial at the first trial. However, it does not appear that the situation here mandated the quashing of the indictment. In support of this argument, the appellant cites Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). However, in Kennedy, the Court noted:
Only where the governmental conduct in question is intended to “goad” the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.
456 U.S. at 676, 102 S.Ct. at 2089.
See also Williams, supra at 988. The appellant argues Kennedy is applicable to this case because the prosecutor must have known the statement was exculpatory, the State’s case was going poorly, and the prosecutor withheld the statement until the only defense witness testified, thereby goading the defense into asking for a mistrial in order to give the State a second chance. However, there are flaws in this argument. First and most importantly, as can be seen from the statement of facts, the State’s case was not going poorly. Indeed, the only two non-biased witnesses to the crime testified they saw the appellant leave the fight, go back inside the bar, come back outside and gun down the victim. As such, the State had more than adequately proved the case against the appellant. The only witness who testified as to any self-defense was Ms. Taylor, who admitted she was the appellant’s girlfriend and that he had fathered her child.
*1364 Secondly, the defense knew of the statement’s existence prior to trial, and although it did not know the exact contents of the statement, it did know the statement contradicted Ms. Taylor’s proposed testimony. The appellant admits Mr. Iuzzolino told Ms. Vix prior to trial that he was going to impeach Ms. Taylor’s testimony with the statement. Yet, the defense did not bring to the court’s attention prior to trial the fact that the State had this statement in its possession and did not produce it pursuant to the request made in the bill of particulars. As such the defense could not have been that “surprised” by the prosecutor’s use of the statement to impeach its sole witness, and it cannot be said the defense was “goaded” into asking for the mistrial.
The appellant also argues the defense was more or less “forced” into accepting the agreement to stipulate to the testimony from the first trial and to not produce any new testimony at that second trial because that was the only way it could “preserve the effective cross-examination that had existed because the Defense had already played their hand to the State’s witnesses.” This decision, however, was merely one of trial strategy, not one forced upon the defense by the State’s action. The defense had already received all the relief it could from the prosecutor’s failure to produce the statement prior to trial, that being the mistrial granted at the first trial. As can be seen, it does not appear the situation here fell within that contemplated by Kennedy, and as such, the indictment did not need to be quashed. It is unfortunate the State’s witnesses had become aware of the questions which were to be asked by the defense on cross-examination, but this would not mandate quashing the indictment. If the trial court had not granted the mistrial in the first trial, the most relief the appellant would have received would have been a reversal of his conviction and a new trial because the holding of Kennedy would not mandate a quashing of the indictment. Under those circumstances, the defense cross-examination would still be known by the State’s witnesses at the new trial, and the only way to “preserve” the “effective” cross-examination would be by such stipulation as occurred here. Thus, the appellant now is seeking more relief than he would have been entitled to had the trial court erred by denying his motion for mistrial in the first trial. The defense was afforded all the relief it was entitled to receive from the State’s failure to produce the statement prior to trial. This assignment of error is without merit.
Accordingly, the defendant Darryl J. Washington’s conviction and sentence are hereby affirmed.
AFFIRMED.
BARRY, J., concurs.