FARMER, Judge.
During the evening recess after the first day of trial, in which the jury had been sworn and opening statements held, the prosecutor trying the case and an investigating police officer went out to defendants’ house. They had neither sought nor been granted permission by defense counsel to speak to the defendants or to conduct an investigation at the defendants’ house, which happens to have been the scene of the alleged crime. They talked to defendants, gained admission to a fenced-in backyard on their property, studied the area and looked inside the house.
On the next morning, defense counsel moved for a dismissal. Both the prosecutor and the detective testified and were cross examined as to their joint visit on the previous evening. In arguing for a dismissal over all other possible remedies, defendants pointed to the testimony just heard and contended that it showed that the prosecutor wanted to make the visit and investigation because of discrepancies between his opening statement and that of the defendants.
“What I submit happened in this case is the prosecutor listened to the defendants’ opening statements, found out the defendants’ theory of defense, and then went with the detective over to the defendants’ residence in order to gain a better understanding of factors and/or information that would help him chew holes in the theory of defense presented by the defendants in their opening statements.
“That’s clearly brought out by myself from the detective when he testified that he and the prosecutor both looked into the house to show him the time and that was in relationship to the conversation they had here at the courthouse when the prosecutor was talking about whether he had seen any blood on the floor or in the house on the night in question.
“As you’ll recall, [defense counsel’s] opening statement to the jury related to the jury that there was blood on the floor, on the tile, and also on the door when [the victim] which it’s our theory happened when [the victim] was running through [the] house after the shotgun went off accidentally. To me that’s the most egregious part about this situation.”
In opposing the motion, the prosecutor argued that the remedy defendants should be seeking was a mistrial. If the court should agree and grant a mistrial, the prosecutor contended, under the Supreme Court’s decision in Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the state would not be barred by the Double Jeopardy Clause from reprosecuting defendants. To this argument, the judge responded:
“They’re not, if I perceive what they’re asking for a motion for mistrial. A motion for mistrial is accomplishing absolutely nothing, and it’s a waste of everybody’s time for there to be a motion for mistrial. They’re asking for a motion for dismissal. I don’t think a motion for mistrial is the appropriate motion here. It’s a motion for dismissal.”
After this comment, the prosecutor continued to argue his Oregon v. Kennedy analysis, and the trial judge again replied:
“Well, the only remedy — a mistrial is a remedy — is elevating form over substance. It’s a remedy without any bite to it. The only issue is whether there’s a dismissal. And then after dismissal, obviously the next question is are you barred from retrying under double jeopardy, under the cur *233 rent posture of the ease, are at basically. That’s where we
“ ⅝ * ⅜ And the issue is whether or not that error in exercising discretion number one, how egregious is it. Number two, if it is egregious, what should be the remedy. “And the remedy, the issue basically is whether it should be raised to the level of a dismissal. I mean the point is the court here sits in two capacities basically as to supervise the conduct of courtroom as well as the conduct of the lawyers in the courtroom. And sometimes cases are dismissed even though there’s a tremendous amount of substance to the case and there’s a tremendous amount of guilt that might be evident, but nevertheless the court has to do what it has to do in order to maintain the integrity of the process and make sure that the rights of the accused, even though the evidence and the presumption is evident of their guilt. And I’m not saying that in this particular case, because I haven’t heard one bit of evidence under oath, but I’m saying even under the extreme case, the court has to take the extreme measure in order to preserve the integrity and the rights of the accused and delineate the obligations of the advocates.”
At that point, the prosecutor contended that the court should declare a mistrial, arguing that when the case is retried the parties would then have the remedies of suppression of evidence, cross examination of the detective, and disqualification of the prosecutor’s office.
In reaching his decision, the trial judge said:
“ * * * I feel that what [the prosecutor] did had the effect of violating the rights of the Defendants, the accused, and that the only way to remedy what happened here because a mistrial would be a remedy without substance, is to grant a dismissal.”
Implicit in the trial court’s dismissal is a factual finding that the police conduct in question had caused continuing prejudice to the defendant’s right to due process of law and the effective assistance of counsel that could not be remedied by suppression of evidence, mistrial, punishment of the prosecutor or any other less drastic treatment. We affirm the trial court’s dismissal of the charges in this criminal case on the grounds of prosecutorial misconduct.
On appeal the state’s entire argument is constructed around United States v. Morrison, 449 U.S. 361,101 S.Ct. 665, 66 L.Ed.2d 564 (1981). In that case, the Court decided that a post-indictment, pretrial interview of defendants by the investigating officers and without the permission or presence of retained counsel did not authorize dismissal of the case where the Sixth Amendment violation had no adverse impact on the criminal proceedings. We cannot help but note that the state failed to present or argue Morrison to the trial court and is here raising it for the first time. Arguments not presented to the trial court are usually deemed waived in the absence of extraordinary circumstances, not present here.
It is at once apparent too, of course, that Morrison has significant differences with this ease. The primary difference here is the trial judge’s factual finding that the prosecutorial misconduct had an adverse impact on the criminal proceeding. The second is that the trial judge in Morrison did not think a dismissal was necessary, that remedy having been first imposed on appeal in that case by the Court of Appeals as a categorical requirement. In contrast, our case involves a trial judge’s conclusion after hearing all the evidence that both a Fifth Amendment due process and a Sixth Amendment right to counsel violation required dismissal as the only remedy called for by the circumstances. The trial judge was on the scene and could better assess the nature and role of the misconduct and its ultimate effect on the case.
We view this as one of those areas of broad discretion, as to which the party aggrieved by the trial judge’s exercise of discretion has the burden of showing a gross abuse. Upon a review of the transcript, we are simply unable to say that no reasonable judge would have ruled as this one did. We express no opinion on any other issue.
AFFIRMED.
*234 STEVENSON, J., concurs.
ANSTEAD, J., dissents with opinion.