GRIFFIN, J.
Defendant below, John Alexander Wors-ham [‘Worsham”], appeals his judgment and sentence, contending that he was convicted of attempted sexual battery in violation of double jeopardy. We find no violation and affirm.
On February 19, 2002, Worsham was charged by information with capital sexual battery on a person less than twelve years of age, in violation of section 794.011(2), *1044 Florida Statutes. He entered a plea of not guilty.
He was tried on December 3 and 4, 2003. The State presented the testimony of the child victim, the child victim’s father, the hotel front desk clerk on duty the night of the alleged incident, and other hotel employees. Then the State called Detective Carl Mitchell with Osceola Sheriffs Office, who investigated the case. During direct examination by the State, the following occurred:
Q. Did you subsequently arrest [Wors-ham]?
A. Yes, I did.
Q. And when you arrested him, did you read him his Miranda[1] rights?
A. Yes, I did.
Q. Okay. And just to make sure the jury knows, what are those rights?
A. They’re the Miranda rights where it encompasses that you have a right to an attorney; that you have the right to remain silent. Just so the jury knows, we have an actual form that we read from and that they initial and that they sign.
Q. And did you do that in Mr. Wors-ham’s case?
A. Yes, I did.
Q. Now, after he was read Miranda, did he make any statements to you?
A. Yes, he did, that he did not—
Q. Okay. And what were those statements?
A. That he did not wish to provide a statement.
[Defense]: Objection. I have a motion to make.
[Court]: Okay. Approach the bench.
(The following discussion was held at the bench.)
[Court]: Why in the world did you do that?
[State]: I instructed him to stay away from that. Let me do a motion to strike and you can give a curative instruction as to that.
[Defense]: Judge, I’m going to move for mistrial. (Indiscernible).
[Court]: Where were you going with this? Why were you even asking that?
[[Image here]]
After removing the jury, the court questioned the prosecutor and the witness at length about what had transpired and what the prosecutor was attempting to elicit:
[State]: Your Honor, as I stated at the bench, I specifically instructed this detective not to mention anything about the defendant invoking his right to remain silent. So it certainly wasn’t anything intentional on the State’s part. I believe it can cured....
[Court]: Well, if he did invoke his right to remain silent, then why would you attempt to get anything that he said? [State]: Because it was a spontaneous statement. It wasn’t in regards to questioning.
The prosecutor then elicited the following from the witness:
Q. Detective Mitchell, when you were booking Mr. Worsham into the Osceola County Jail, did he make any spontaneous statements to you?
A. Yes, he did.
Q. And what were they?
A. He was saying that at that time that he didn’t do it. Then he said, yes, I was in the room. And then he identified another person being in that room.
Q. And who did he identify?
*1045 A. The name that he gave me was a Laura Banks.
Q. And did he also initially say that he wasn’t in room 224?
A. Yes. I put in my report that he had recanted.
Q. Okay. Now, did that prompt any questioning on your part or was that a spontaneous statement made by him?
A. That was a spontaneous statement
[[Image here]]
The trial court concluded that because Detective Mitchell testified about Wors-ham’s invocation of his right to remain silent, a mistrial was required.
Worsham was retried in this case on December 16 and 17, 2003. At the beginning of trial, counsel for Worsham filed a motion to dismiss the case on double jeopardy grounds and argued the motion to the court. The following exchange occurred:
[Defense]: I have not found a single Florida case that would factually support our position. I would note that the difference I did find in all the cases that I cited in the motion is that it does seem when you look at the transcript of the hearing, that the detective’s testimony does differ significantly from the explanation given by the State. And I think that’s something the court has to consider. I would argue that in all the trials that I have had, it seems like the usual inadvertent error is when an attorney gets a little ahead of himself in closing argument, or herself, as in this case. I think we have outlined sufficiently by the transcript, stating what Detective Mitchell explained to you and what Ms. DeYoung explained to you, to adequately explain our position that because we believe we were goaded, and I use that word because that’s what the judge used, which means compelled and asking for a mistrial, and we believe, therefore, double jeopardy does kick in. And under those circumstances, the court would have the authority to grant the motion to dismiss.
* * *
[State]: In the State’s defense, what I would say is that this was one mistake. I was not goading the defendant into a mistrial. I had gotten my evidence in, my witnesses had testified. It was my last witness. The State had gone through great expense to bring witnesses down to testify in this trial. The last thing I wanted was a mistrial. And if you read the testimony that was provided in the defendant’s motion, I mean, I say that it’s obvious that the State was trying to correct the detective when he was on the stand. Because he starts saying, yes, he did; that he did not. And I could tell that he was going to say he did not want to speak to me. And, so, you know what? What were those statements? Because I had specifically told him, don’t mention he wouldn’t speak to you. I just want to go to the spontaneous statements. And even then he still continued on, even though I interrupted and tried to get him over that. I mean, this was just so unintentional by the State. It may have been negligence in the question that I asked him but it certainly doesn’t rise to a double jeopardy issue.
[Court]: Now, what was discussed at the time, I thought was quite negligent by the State — the answers he gave were in direct response to the direct question you asked. And if you’re trying to get to the spontaneous statements, shouldn’t even have gotten into Miranda rights at all. There was no reason to get into Miranda rights.
[State]: Right. If I could just explain that. I mean, you might completely disagree and in hindsight it probably *1046 wasn’t the way to go. The whole reason I brought that up is I knew that wasn’t an issue, Miranda. But what I was kind of afraid of was that a juror would go back in the jury room and say, you know, but they didn’t even read him Miranda, you know, evpn though that wasn’t even an issue. Jurors do that. And I thought I was safe going into that because I had specifically instructed this detective on what not to say.
* # *
[Court]: Right. Okay. Well, I had — I mean, I knew when it happened that it was the last thing that the State wanted, that Ms. DeYoung wanted. That I do not find that she did this intentionally for the purpose of provoking a mistrial, but I think the evidence went in as well, as she could have expected. You know, what the jury would have done, but I don’t know if you could have presented your case any better than you had with the facts that you had to deal with. And I could tell the anguish that you suffered at the time when this happened. So the court does not find that this was done intentionally for the purpose of obtaining a mistrial, not done intentionally by the State, but it was negligent.
The court then denied Worsham’s motion to dismiss. Worsham renewed the motion to dismiss on the basis of double jeopardy after the State rested, and it was again denied by the court. At the end of trial, the jury found Worsham guilty of the lesser included offense of attempted sexual battery.
The Florida supreme court has explained in Fuente v. State, 549 So.2d 652 (Fla.1989):
Double jeopardy is generally no bar to a subsequent prosecution when a mistrial was granted in the original trial upon the defendant’s motion. [Citations omitted]. In Oregon v. Kennedy, [456 U.S. 667, 102 S.Ct. 2088, 72 L.Ed.2d 416 (1982)], the. United States Supreme Court held that there is a narrow exception to this rule where it can be shown that the prosecution’s “conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.” 456 U.S. at 679, 102 S.Ct. at 2091.... [T]he Court explained that prosecutorial conduct that might be viewed as harassment or overreaching sufficient to justify a mistrial, is insufficient to bar a retrial absent such an intent. Id. at 675-76, 102 S.Ct. at 2089-90. “Only where the governmental conduct in question is intended to ‘goad’ the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.” Id. at 676, 102 S.Ct. at 2089.
Id. at 657-658; see also Gore v. State, 784 So.2d 418 (Fla.2001); State v. Gaines, 770 So.2d 1221 (Fla.2000).
This court dealt with a similar situation in Bell v. State, 413 So.2d 1292 (Fla. 5th DCA 1982). In Bell, a mistrial was granted by the trial court on the basis of an alleged prosecutorial comment on defendant’s right to remain silent. Id. at 1293. The case was reset for trial, and the defendant moved to dismiss on the ground that retrial would place him in double jeopardy. Id. at 1293-1294. The trial court denied the motion to dismiss, the defendant was tried and convicted, and the defendant appealed. Id. at 1294. This court held that double jeopardy only barred retrials where bad faith conduct by the judge or prosecutor goaded the defendant into moving for mistrial. Id. Because the trial judge did not find that the action was calculated in bad faith to provoke a mistrial, there was *1047 no error in denying the motion to dismiss. Id.
Here, as in Bell, the trial court made specific findings that the State did not intentionally cause a mistrial. The trial court was in the best position to observe the events at the time in which they happened, and the record supports the trial court’s decision.
AFFIRMED.
PETERSON and MONACO, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).