616 S.E.2d 444

**The STATE, Appellant,**

v.

**Lawrence A. COLEMAN, Arthur Caesar, and Scott A. Adamson, Respondents.**

**No. 4008.**

Court of Appeals of South Carolina.

Heard May 11, 2005.

Decided July 5, 2005.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Chief, State Grand Jury Sherri A. Lydon, and Assistant Deputy Attorney General Robert E. Bogan, all of Columbia, for Appellant.

Francis L. Bell, Jr., of Lancaster, Robert T. Williams, Sr., of Lexington and Robert William Mills, of Columbia, for Respondents.

STILWELL, J.:

The State appeals the trial court's order finding double jeopardy barred the State from prosecuting Lawrence A. Coleman, Arthur Caesar, and Scott A. Adamson. We reverse.

## FACTS

On January 28, 2001, John Allen was working as a guard at the Kershaw Correctional Institution. Another guard called for assistance with two inmates, Erving and Jones, who were causing a disturbance. Allen, Caesar, and other guards responded and escorted Erving and Jones to the "special management unit" located in an adjacent building. As they were crossing the prison yard, Erving became aggressive toward Allen. Allen sprayed Erving with mace and forced him to the ground. While Allen had Erving on the ground, Jones jumped on Allen from behind and punched him on the back of his head and the side of his face.

After the altercation ended, Coleman, the highest-ranking guard on duty, spoke to the guards who were involved about the incident. Coleman ordered Jones handcuffed and escorted to the "A" building's holding cell. Caesar and Adamson escorted Jones to the holding cell, and Coleman joined them en route. Caesar left briefly and returned with Allen. Coleman ordered Jones's handcuffs removed, and Allen pushed Jones from behind. Allen and Jones then exchanged blows with Allen hitting, kicking, and biting Jones while the other guards, including Respondents, watched without intervening. After one of the guards made the comment to Jones that he had "better not win," Jones curled into a ball on the floor and Allen continued to kick him.

After Jones reported the incident, the State Law Enforcement Division (SLED) investigated. Although Allen originally denied the altercation occurred, he later confessed and assisted SLED in its investigation. The grand jury indicted Respondents on the common law charge of misconduct in office.

At the initial trial, Respondents made several objections to portions of the solicitor's opening statement. The following colloquy took place:

Solicitor Bogan's Opening Statement: As I mentioned to you, there are two incidents that occurred here. The first one, the transfer from the Oak building holding cell to the Special Management Unit concerned a little scuffle that was handled fairly professionally by the officers, and then the second attitude adjustment if you will of inmate . . .

Defense counsel Mr. Mills: Your Honor, I object. He's getting into argument at this time.

The Court: I'll allow it. Go ahead.

Mr. Bogan: The second incident that occurred in the A building holding cell with inmate Jones and the six corrections officers. How do you know that that took place dishonestly, corruptly? The evidence will show in this case that the officers took the position that it never happened.

Defense counsel Mr. Bell: Your Honor, I'm going to object to that comment unless he's going to point to one particular officer. My officer never took that position. I'm going to object. That's unfair comment that he's not going to be able to prove as to my client. I can't speak for anybody else.

The Court: Well, of course, you'll be able to address that in your opening, Mr. Bell, but Mr. Bogan, if it's comments that apply to only one of the defendants, you should identify or exclude the ones that it doesn't apply to.

. . .

Mr. Bogan: Ladies and Gentlemen, we'll present some testimony concerning what each of the defendants did, if anything, concerning the dishonesty and corruption that occurred in this case. Consider this, no report, you'll hear testimony, was ever filed concerning—

Mr. Bell: Objection, Your Honor, I——the indictment charges me with what occurred on the 28th and nothing thereafter. I'm going to object to the State trying to expand what he says I did wrong. It's not in the indictment, Your Honor.

Mr. Mills: I join in——

Mr. Bell: He cannot——He cannot convict me of something I'm not indicted in.

Defense counsel Mr. Williams: I also join in that.

Mr. Bell: I'm not indicted on that.

The Court: Mr. Bogan?

Mr. Bogan: Thank you, Your Honor. I contend that the fact that no report was ever filed and that the fact that the report that was filed only contained half the story is evidence of the dishonesty and the cover-up.

Mr. Bell: I move for a mistrial, Your Honor.

Mr. Mills: I would join the motion, Your Honor.

Mr. Williams: I would join.

Thereafter, the trial judge excused the jury and heard arguments regarding the motion for a mistrial. Respondents' attorneys argued the solicitor's comments, characterizing the guards' failure to file a report as a cover-up, went beyond the scope of the indictment. The solicitor opposed the motion for a mistrial, arguing the guards' failure to file a report was evidence of dishonesty, an element of the crime charged. Although the trial judge stated he knew the solicitor's comments were "not an intentional thing," he granted a mistrial.

Respondents' attorneys opposed beginning the trial anew the following day, so the case was rescheduled. Before the case was called to trial for the second time, the solicitor obtained a superseding indictment containing language referencing the "cover-up" to avoid another mistrial. Subsequently, Respondents' attorneys moved to dismiss the case based on double jeopardy. After a hearing, the trial judge dismissed the case based on his finding that the solicitor "forced these Defendants into seeking a mistrial after jeopardy had attached." The State appeals.

## LAW/ANALYSIS

The State argues the trial judge erred in dismissing the case based on the Double Jeopardy Clauses of the United States and South Carolina Constitutions. We agree.

■■ The Double Jeopardy Clauses of the United States and South Carolina Constitutions protect citizens from being twice placed in jeopardy of life or liberty. *See* U.S. Const. amend. V ("No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ."); S.C. Const. art. I, § 12 ("No person shall be subject for the same

offense to be twice put in jeopardy of life or liberty...."). Under the law of double jeopardy, a defendant may not be prosecuted for the same offense after an acquittal, a conviction, or an improvidently granted mistrial. *State v. Rowlands,* 343 S.C. 454, 457, 539 S.E.2d 717, 718 (Ct.App.2000).

In *Oregon v. Kennedy,* the Supreme Court adopted a rule providing that a defendant who has moved for and been granted a mistrial may successfully invoke the Double Jeopardy Clause to prevent a second prosecution only when the prosecutor's conduct giving rise to the mistrial was intended to "goad" or provoke him into moving for the mistrial. 456 U.S. 667, 676–77, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). *See also State v. Mathis,* 359 S.C. 450, 460, 597 S.E.2d 872, 877 (Ct.App.2004) (applying same standard in South Carolina).

■ Under this standard, the determination of whether double jeopardy attaches depends upon whether the prosecutorial misconduct was undertaken with the specific intent "to subvert the protections afforded by the Double Jeopardy Clause." *Mathis,* 359 S.C. at 460, 597 S.E.2d at 877 (quoting *Kennedy,* 456 U.S. at 676, 102 S.Ct. 2083). The trial court's finding concerning the prosecutor's intent is a factual one and will not be disturbed on appeal unless clearly erroneous. *Id.* at 460–61, 597 S.E.2d at 877–78.

Here, there is clear error. At the initial trial, the trial court specifically found the solicitor's comments did not intentionally provoke the Respondents into moving for a mistrial. At the time of Respondents' objection, after the jury was excused, the solicitor apologized to the court and stated he was, in good faith, trying to establish dishonesty, an element of the crime charged. The trial judge concluded:

> I know that it was not an intentional thing. I don't mean to imply that at all, but I——you know, my job is to make certain that these gentlemen get a fair trial.... And I'm just not certain——well, one, I am certain that you didn't intentionally do anything to cause that not to happen, but I'm certain that there's no way to give them a curative instruction that would erase——erase it from their mind, and for that reason, I'm going to grant a mistrial in this case.

In the order of dismissal based on double jeopardy, the trial court considered this statement by the solicitor: "I contend that the fact that no report was ever filed and the fact that the

report that was filed only contained half the story as evidence of the dishonesty and cover-up." The trial court concluded the solicitor forced Respondents to move for a mistrial "because it was the third time the Prosecutor had made this statement before the jury after twice being instructed not to . . . ."

However, the record conclusively shows the objections to the solicitor's first two comments were on other grounds. The ground for the first objection was for exceeding the scope of the opening statement and "getting into argument." The second objection dealt with the solicitor's failure to differentiate between the three defendants. We fail to see, based on the record, any intent by the solicitor to force a mistrial. The trial court overruled the first objection. The trial court essentially ruled again for the solicitor on the second objection, although the court also cautioned the solicitor to differentiate between the defendants. The last objection, and the only one on the grounds giving rise to the double jeopardy issue, resulted in the motion for mistrial even before there was a ruling on the objection by the trial court.

Based on the record, there is only one reasonable inference. Under the facts of this case, the solicitor's conduct was unintentional as a matter of law. Accordingly, we find that the Double Jeopardy Clause is no bar to Respondents' retrial. The order of the trial court is

**REVERSED.**

ANDERSON and WILLIAMS, JJ., concur.