In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-09-00033-CR


____________________



EX PARTE BENJAMIN BERNARD GARRETT






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 2270 (07-00601)






MEMORANDUM OPINION


 This is an appeal from the trial court's order denying Benjamin Bernard Garrett's
application for a writ of habeas corpus. We affirm.

 Garrett was charged with first-degree murder. When the case was called for trial on
May 6, 2008, family members caused a disturbance in the courtroom during defense
counsel's voir dire. The colloquy occurred as follows:

 [Defense counsel]: . . . But once he starts shooting, if I return fire, my
actions are what?


 [Unidentified juror]: Justified.


 [Defense counsel]: And I'm on his what?

 

 [Unidentified juror]: Property. 


 [Defense counsel]: Do you see that? Who has a problem with that?


 [Family member]: I do, sir.


 [Defense counsel]: Are you a juror?


 [Family member]: No, I'm the defendant's -- that's - 


 THE COURT: All right. Just a second. Remove that lady.


 THE BAILIFF: Ma'am.


 [Family member]: Why can't I speak?


 THE COURT: Remove that woman immediately.


 [Family member]: It's okay for him to murder somebody -


 THE COURT: Ma'am, you need to be quiet immediately.


 [Family member]: You had already did what you had to do down the street. 
Tell them the truth.


 [Second family member]: He's not getting no justice over there. He's going to
walk away for killing my brother.


 (Two observers escorted out of the courtroom)


 The trial court instructed the jury to disregard the family members' statements, and
defense counsel completed his voir dire. While the court was questioning a juror after voir
dire concerning the fact that the juror knew one of Garrett's attorneys, that juror stated as
follows: "To be honest, I'm not comfortable with this; and even after the bailiff put the two
people in late [sic], that just really put me over the edge." The juror also stated, "Well, we
need more security here. That is not safe for our elected officials or for me to do my civic
duty. I'm not comfortable with that at all." Subsequently, after a break in the proceedings,
the following occurred:

 THE COURT: . . . Two observers interrupted the proceedings during voir dire
and made uncalled for and inappropriate remarks out loud. They interrupted
the decorum and the civil proceedings that were attempted to have been
administrated [sic] in this court, and their conduct was abusive and disruptive.


 I ordered one removed and when that one lady . . . was being removed,
then a second woman stood up and started making similar statements directed
toward the defendant in front of the jury panel. I find that that [sic] is not in
the best interest of justice. The defense has made a motion for a mistrial
because of that behavior and also it's been brought to the Court's attention that
while we were awaiting the lawyers to make their strikes, that there was some
apparent confrontation of [sic] members of the . . . complainant's family and
I guess the defendant's family that occurred that were boisterous,
inappropriate, offensive and in an area near or close to the jury where the jury
was waiting. Defense is asking for a mistrial?


 [Defense counsel]: Yes. At this time, the defendant moves for a mistrial,
Your Honor.


 THE COURT: And what does the State say? Do you join in that motion?


 [Prosecutor]: Yes, Your Honor.


 THE COURT: It's granted.


 The Court called Garrett's case for trial on November 18. (1) Prior to commencement
of trial, the trial court entered an order that, among other things, required counsel 

 to instruct all of their witnesses that the Court has invoked the "rule" and that:
(1) no witness is permitted to hear the testimony of any other witness; (2) no
witness is to discuss anything about the case with any other witness[;] and (3)
no witness is to obtain any information about the case from any source
whatsoever. If counsel does not so instruct each of their witnesses or if an
instructed witness violates this order, the witness may be prohibited from
testifying.


The Court required the prosecutor and Garrett's counsel to sign the order, and both attorneys
did so. During its case in chief, the State called numerous witnesses, including Michael
Hockless. The State then rested, and the defense then put on its case, during which it also
called several witnesses.

 During its rebuttal, the State recalled three witnesses, including Michael Hockless. 
When Hockless was testifying during cross-examination, defense counsel asked Hockless
whether he'd had any opportunity to mingle with the deceased's family, and Hockless
responded, "Yes. I talk to them outside. That's about it." Hockless explained that he
discussed the case with members of the deceased's family outside the courtroom, and he
explained, "We [sic] just blasé about it, all what had happened, my part, what I seen." When
asked whether the judge had given him a form to sign, Hockless stated that he did not recall
being asked to sign a form, but he then said, "I might have." Hockless denied being
instructed about the rule and not speaking to anyone about the case. Hockless testified that
some of the family members to whom he had spoken had also testified in the case.

 Defense counsel indicated that he wished to present a motion, and after the jury left
the courtroom, defense counsel moved to strike Hockless's testimony, and counsel also
stated, "[a]dditionally, your Honor, I would have to move for a mistrial." The prosecutor
questioned Hockless about a conversation the prosecutor and Hockless purportedly had, in
which the prosecutor maintained that he had instructed Hockless not to speak to any other
witnesses, but Hockless denied recalling any such conversation. After allowing the
prosecutor an opportunity to search his file for a form signed by Hockless, the prosecutor
stated, "your Honor, I know I talked to him about it. I can't remember if - I had it sitting
there on my desk in front of me. I don't remember. I honestly don't."

 When the trial court pointed out that Hockless testified that he spoke to other State's
witnesses after he initially testified, the following colloquy occurred:

 THE COURT: He was your first witness.


 [Prosecutor]: I understand.


 THE COURT: He testified he talked to your other witnesses after that.


 [Prosecutor]: I had no control over him after he left the courtroom, your
Honor.


 THE COURT: I'm not suggesting fault. I'm suggesting what can I do about
[defense counsel]'s motion?


 . . . .


 [Prosecutor]: I instructed all my witnesses.


 THE COURT: And I don't doubt that for one moment. If you did, they didn't
apparently obey.


When Hockless was further questioned by defense counsel, Hockless maintained that he did
not recall signing any forms or being told "anything about witnesses[.]" Defense counsel
then stated as follows: "Your Honor, in addition to my motion for a mistrial, I'm also
moving to strike his testimony. . . . But my main motion is is [sic] that I want a mistrial. . .
." The prosecutor reiterated to the Court that "whether [Hockless] recalls or does not recall,
I know that we talked about the rule." The Court stated,

 I don't suggest any bad faith or anything like that - don't misunderstand me
- but my job is to make sure everybody gets a fair trial and . . . I don't feel very
comfortable that the defendant has gotten a fair trial in these
circumstances. . . . 


 A mistrial is the most harsh remedy that is available in this case,
[defense counsel]; and I urge you to give some serious consideration to the
question I'm about to ask you. There may be lesser remedies that could solve
the violation that I see here. If you're telling me that you're not accepting any
other lesser remedy, I'd like to know it.


The Court continued, "There's [sic] only two remedies that are available. One is to tell the
jury to disregard testimony. The other is to grant a mistrial. If I instruct the jury to disregard
the testimony of the witnesses that this evidence shows violated the rule, then it seems like
he has a point. There would be no evidence there to justify submitting the case to the jury." 
The prosecutor agreed with the trial court's assessment, and stated that the "better position"
would be a mistrial. The following colloquy then occurred between defense counsel and the
trial court:

 [Defense counsel]: Well, your Honor, . . . by the State's own admission and if the
Court is saying the lesser thing would be to disregard that
testimony, of course we would want an instructed verdict that it
seems to me in all likelihood would be granted.


 THE COURT: You asked for a mistrial; and your conditional request was if
that was denied, you wanted a motion for the witnesses to be
disregarded. That's what you said.


 [Defense counsel]: Well, I asked specifically . . . would we be given an opportunity
to reurge our motion for an instructed verdict -


 THE COURT: Yeah.


 [Defense counsel]: - if that was done. But I believe I answered your question as to
whether or not did we accept or reject the lesser thing.


 THE COURT: Well, this dialogue, whatever it is, was initiated by me based on
your motion, which was for a mistrial.


 [Defense counsel]: Yes.


 THE COURT: That's what you asked for.


 [Defense counsel]: That's correct.


 THE COURT: All right. Your motion for mistrial is granted.


 After the trial court granted the second mistrial, Garrett filed a special plea of double
jeopardy and a pre-trial application for writ of habeas corpus, in which he asserted that
double jeopardy barred the State from retrying him. Specifically, Garrett argued that the
State's conduct that gave rise to his second motion for mistrial was intended to goad him into
moving for a mistrial. The trial court signed an order denying Garrett's special plea of
double jeopardy. In its order, the trial court found that the prosecutors did not try to goad or
lure Garrett into requesting mistrials, and that Garrett's special plea of double jeopardy was
unmeritorious. Garrett then filed this appeal.

 Garrett raises two issues for our consideration. In issue one, Garrett argues that he
was entitled to a mistrial "because the State asked for a mistrial in a case where the jury had
been empaneled and jeopardy attached." In issue two, Garrett asserts that he is entitled to
a writ of habeas corpus on double jeopardy grounds because the State goaded him into
requesting a mistrial. Specifically, Garrett contends that because the State agreed that a
mistrial was a better remedy for Hockless's failure to follow the rule, the State's
acquiescence "places it in the position of having agreed to the mistrial, and therefore unable
to retry Garrett[,]" and that the State's failure to properly instruct its witnesses regarding the
rule was calculated to goad Garrett into seeking a mistrial, "so Garrett's retrial is barred by
double jeopardy." We address these issues together.

 In reviewing a trial court's decision to deny habeas corpus relief, we view the facts
in the light most favorable to the trial court's ruling. Ex parte Wheeler, 203 S.W.3d 317, 324
(Tex. Crim. App. 2006). We afford almost total deference to the trial court's determination
of the historical facts that are supported by the record, especially when the fact findings are
based on the trial court's evaluation of credibility and demeanor. Ex parte Peterson, 117
S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), overruled in part on other grounds
by Ex parte Lewis, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

 The Fifth Amendment to the United States Constitution protects a defendant from
repeated prosecutions for the same offense. See Oregon v. Kennedy, 456 U.S. 667, 671, 102
S.Ct. 2083, 72 L.Ed.2d 416 (1982). Part of the double jeopardy provision affords a criminal
defendant the right to have his trial completed by the jury first selected. Id. However, when
the trial court declares a mistrial at the request of a criminal defendant, the State is generally
not barred from retrying the defendant. Id. at 675. There is a narrow exception to this rule
when the State's conduct was intended to "goad the defendant into moving for a mistrial." 
Id. at 675-76, 679. In determining whether the prosecutor intended to goad a defendant into
requesting a mistrial, an appellate court must "focus primarily upon the objective facts and
circumstances of the prosecutor's conduct and the events which led to that conduct." Ex
parte Peterson, 117 S.W.3d at 815. "If the prosecutor's conduct, viewed objectively, was
not 'manifestly improper,' then the double jeopardy inquiry ends at this first stage." Id. at
816 n.55.

 As the previously quoted portions of the exchanges between defense counsel, the
prosecutor, and the trial court reveal, it was Garrett, not the State, who moved for a mistrial
after Hockless's failure to obey the trial court's order came to light. The fact that the
prosecutor concurred with the trial court's statement that a mistrial was a "better position"
for the State does not convert the motion from one made by Garrett's counsel to one made
by the State. Therefore, we overrule issue one.

 The trial court had the opportunity to evaluate the credibility and demeanor of the
statements of both Hockless and the prosecutor regarding whether the prosecutor had
discussed the rule with Hockless. The trial court stated, both on the record at Garrett's
second trial and in the subsequent order denying Garrett's application for a writ of habeas
corpus, that the State had not attempted to goad Garrett into seeking a mistrial. Viewing the
facts, as we must, in the light most favorable to the trial court's ruling, and giving deference
to the trial court's evaluations of credibility and demeanor, we conclude that the record does
not show that the trial court erred by denying appellant's special plea of double jeopardy and
petition for writ of habeas corpus. See Kennedy, 456 U.S. at 675. Accordingly, we overrule
issue two and affirm the trial court's judgment.

 AFFIRMED.


 _________________________________

 STEVE McKEITHEN 

 Chief Justice


Submitted on July 7, 2009

Opinion Delivered August 12, 2009

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Garrett does not raise any issue on appeal concerning the trial court's decision to
grant a mistrial after voir dire in the first trial.