**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 3, 2012**

# In the Court of Appeals of Georgia

A12A1097. KESLER v. THE STATE.

BARNES, Presiding Judge.

Kevin Kesler and his co-defendant were indicted for trafficking in cocaine and possession of hydrocodone, a controlled substance. Before trial, the court granted Kesler's motion in limine to exclude hearsay evidence identifying Kesler as a suspect, specifically ruling that the investigating officers could not testify that they told the confidential informant to call "Kevin." But the second witness did so anyway, and the trial court granted Kesler's motion for a mistrial. Kesler then filed a plea in bar, arguing that the State essentially goaded him into moving for a mistrial and therefore could not retry him. The trial court denied the motion, and for the reasons that follow, we affirm.

The primary purpose of the Double Jeopardy Clause is to prohibit the retrial of a criminal defendant where, at the initial trial, the prosecution failed to introduce sufficient evidence to sustain a conviction. Retrial generally is not prohibited where reversal is due to trial error rather then the sufficiency of the evidence. Where, as here, a mistrial is granted at the request of a criminal defendant, retrial is not prohibited on the basis of double jeopardy unless it is established that the State intended to "goad" the defendant into moving for a mistrial in order for the State to avoid a reversal due to prosecutorial or judicial error, or otherwise to obtain a more favorable chance of a guilty verdict on retrial.

(Citations omitted.) *Williams v. State*, 268 Ga. 488, 489 (491 SE2d 377) (1997).

In determining whether a prosecutor intended to goad a defendant into moving for mistrial, the trial court must make a finding of fact by "inferring the existence or nonexistence of intent from objective facts and circumstances." *Oregon v. Kennedy*, 456 U.S. 667, 675 (102 SC 2083, 72 LE2d 416) (1982); *State v. Thomas*, 275 Ga. 167 (562 SE2d 501) (2002). We will affirm the trial court's resolution of factual issues "if there is any evidence to support them, and this holds true even if the findings are based upon circumstantial evidence and the reasonable inferences which flow from them." Id. at 168.

2

Kesler argues on appeal that retrial should be barred because the prosecutor goaded him into moving for a mistrial, and that the trial court's findings of fact to the contrary were clearly erroneous. During the trial, the State asked the first officer who testified what he had instructed the informant to do. He responded, "I instructed the CI to contact a specific individual via telephone to order a specific amount of narcotics to be delivered." He then testified that the informant set up the buy and the officers staked out the delivery location at an abandoned building on a dirt road. The only vehicle that traveled down the dirt road while the officers were watching was a truck in which Kesler was the passenger, but the driver drove past the meeting site and turned onto a paved road. Officers stopped the truck about a mile from the intersection.

The first officer testified that the call log on one of two cell phones found in the truck showed several calls from the CI's phone within the previous two hours. Other officers searching the roadside along the truck's route of travel discovered bags containing 100 hydrocodone pills and almost two ounces of cocaine.

The State then called a second officer to the stand, and the following exchange occurred:

Q: And you and [the first officer] met with the CI. Did [the first officer] instruct the CI to make any phone calls?

A: Yes.

Q: And what did [the first officer] tell the CI to do?

A: Told the confidential informant to –

[KESLER]: Objection, your Honor.

A: – call Kevin.

[KESLER]: That's hearsay. [The first officer] was just on the stand.

[THE STATE]: He just testified to it. He just testified.

THE COURT: The fact's already in evidence.

[KESLER]: Well, that's another reason. It's hearsay.

THE COURT: He was there. He can state what he observed.

Q: What did you observe [the first agent] tell the CI to do?

A: To call a person named Kevin.

Kesler objected again and moved for a mistrial, arguing that the trial court had just granted his motion in limine that morning and specifically ruled that the State's witnesses were not to testify that the CI was told to call "Kevin." The crux of his successful motion in limine was to preclude testimony about exactly that type of hearsay identification testimony, he argued. The State responded that the testimony was not evidence of identity, and while the trial court said it "would tend to agree" with that argument, it also noted that it had ruled earlier that morning that the State's witnesses would not use the name "Kevin" in their testimony. The court agreed with

Kesler that a curative instruction would not remove the issue from the jury's mind and granted the mistrial.

Kesler then filed a plea in bar, arguing that he should not be retried because, by eliciting the prohibited information, the State either intended to cause a mistrial or committed "such a gross and obvious error that it should be equated with an intent to cause a mistrial." At a hearing on the motion, the officer who caused the mistrial testified that he was not sure if he could use the name, and "never got clarification" about it before he testified, but then admitted that initially he had been instructed not to use the name "Kevin." He understood that the State was going to go back into the courtroom and ask the trial court to reconsider its ruling, but no one told him the outcome of that request for reconsideration, so he was confused about his instructions. He admitted, however, that no one ever told him to say the name "Kevin."

During argument the prosecutor explained that when he asked the question, he was "just trying to set up that these calls were made" to explain how the case came about. The trial court had been clear in its ruling, and the prosecutor stated in his place that the witness had been told not to use the name. In hindsight, the prosecutor conceded, the witness should have been briefed on the fact that the court had not

changed its mind, but he also argued that there was no reason for the State to desire a mistrial at that point during the second witness's testimony.

In its order denying the motion, the trial court noted that Kesler did not object when the State asked similar questions of the first officer, who testified that the CI called a "specific individual." "Therefore," the court continued, "the State's use of the same line of questioning, without objection from [Kesler], shows that there was no intent by the State to goad or force [Kesler] into requesting a mistrial." From having observed the State's demeanor and the progress of the trial, the court found credible the State's explanation about the issue.

While Kesler stated without citation in his brief that "the prosecutor unequivocally stated that he specifically intended to elicit the name "Kevin" from [the witness] because, despite the court's ruling, he did not consider the information to be hearsay," this assertion is baseless. The prosecutor made no such statement, either at trial or during the motion on Kesler's plea in bar.

The evidence, as outlined above, supports the trial court's findings that the State did not intend to goad Kesler into moving for a mistrial. Accordingly, we find no error in the trial court's denial of Kesler's plea in bar.

*Judgment affirmed. Adams and McFadden, JJ., concur.*