

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00582-CR

EX PARTE BYRIAS ROBERSON

----------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY
TRIAL COURT NO. 58017-E

----------

## OPINION

----------

Appellant Byrias Roberson appeals the denial of his pretrial application for writ of habeas corpus. Appellant contends the State goaded him into moving for a mistrial during his first trial and, therefore, any retrial would violate his protections against double jeopardy. We affirm.

## Background

In appellant's first trial for resisting arrest, the record shows that after the parties made their strikes, the jury was selected, the jury was sworn, the trial court excused the remaining veniremembers, the trial court gave instructions to the six jurors, the State read the indictment, appellant pled not guilty, and the trial court excused the jury despite the fact it was only about 3:00 p.m. and instructed the jurors to return the next morning. The record then resumes with the notation, "(Open court, defendant present, no jury)," and the prosecutor announced that the State's investigator, Donnie Cavinder, had "mistakenly" spoken to one of the jurors. The prosecutor stated that it was Cavinder, not a juror, who brought the matter to her attention. Cavinder was sworn in and testified that he left the courtroom before the jury was seated to run some equipment upstairs and, as he was coming back down, saw a person whom he believed to be Veniremember Fifteen. Cavinder explained that Veniremember Fifteen had already been released, so he decided to talk to her because she had commented during voir dire that she knew of him. Cavinder said the woman then corrected him by saying Veniremember Fifteen was someone else, and then it came up that the woman to whom he was speaking was the one who went to a game warden school. Cavinder said he then saw her badge by her right side and realized she was a juror. Cavinder denied discussing anything about the case. Although given an opportunity to cross-examine Cavinder, appellant declined. Ostensibly

2

because the jurors had been excused, the trial court was not able to speak to the juror in question that day.

When the case resumed the next morning, the trial court questioned Veniremember Eight, who had become the third juror (Juror Number Three). She testified Cavinder just asked about her experience as a game warden. She added she thought Cavinder also made a comment to the effect, "You were struck, but then we got you on." She said she responded indifferently and told him she was going to leave. Juror Number Three continued, "[W]e stopped the conversation right there because he didn't realize that at [that] point I was a juror, a selected juror, I guess." Juror Number Three said she was wearing her juror badge on her purse.

Appellant thereafter moved for a mistrial. Appellant argued that regardless of what was actually said, he was left with no choice but to ask for a mistrial because the problem was that Cavinder said "we" got you on, and Juror Number Three was left with the impression that appellant did not want her on the panel whereas the State did. Appellant further stated, "[W]e're certainly not casting dispersions [sic] on Mr. Cavinder." When granting the mistrial, the trial judge said, "And I'm not casting fault on Investigator Cavinder at all. I understand that was an honest mistake. I completely believe that he believed he was speaking to [Veniremember Fifteen]."

A review of the record shows Veniremember Fifteen had indicated during voir dire that although she didn't know Cavinder, she knew of him. The voir dire

3

also shows Juror Number Three disclosed she went to a game warden academy. The record does not reflect when Cavinder left the courtroom.

Thereafter, appellant filed an application for writ of habeas corpus. Appellant contended the prosecution goaded him into requesting a mistrial. The State filed a bench brief in which it conceded Cavinder's conversation with Juror Number Three was inappropriate but asserted Cavinder's blunder was insufficient under the relevant standard to meet appellant's burden of showing the State intended to provoke him into moving for a mistrial.

At the hearing on appellant's application for writ of habeas corpus, which occurred approximately fifty days after the trial court granted the mistrial, appellant's wife testified that she was present when the previous jury was selected, and she maintained Cavinder did not leave the courtroom until the jurors left the courtroom. Her recollection was the other veniremembers left the courtroom ten to fifteen minutes before the jurors themselves left. She estimated five to ten minutes after the jurors left the courtroom, the prosecutor and Cavinder came back into the courtroom to alert the court about the conversation. Appellant again argued the State intended to goad him into moving for a mistrial. The State again argued Cavinder's conduct was the result of a mistake. The trial court denied appellant's application.

The parties do not dispute jeopardy attached at the first trial. Jeopardy attaches at the time the jury is empaneled and sworn. *State v. Blackshere*, 344 S.W.3d 400, 404 (Tex. Crim. App. 2011). The parties also do not dispute the

4

State was responsible for its investigator's actions. The investigative team's knowledge is imputed to the prosecutor. *Ex parte Adams*, 768 S.W.2d 281, 291 –92 (Tex. Crim. App. 1989).

**Standard of Review**

"Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S. Ct. 2083, 2089 (1982); *Ex parte Bennett*, 245 S.W.3d 616, 618–19 (Tex. App.—Fort Worth 2008, pet. ref'd). "Under both the federal and state constitutions, retrial is barred only if the prosecutor intentionally caused a mistrial." *Bennett*, 245 S.W.3d at 619. When reviewing a trial court's decision to grant or deny habeas relief, appellate courts consider the evidence in the light most favorable to the trial court's ruling and should uphold the ruling absent an abuse of discretion. *Id.* at 618. The Court of Criminal Appeals has set out a nonexclusive list of objective factors to assist the trial court when assessing the prosecutor's or its agent's state of mind: (1) Was the misconduct an attempt to abort a trial that was going badly for the State? Put another way, at the time the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal? (2) Was the misconduct repeated despite the trial court's admonitions? (3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct? (4) Was the conduct "clearly erroneous"? (5) Was there a legally or factually plausible basis for the

5

conduct despite its impropriety?  (6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they intentional?[1]  *See Ex parte Wheeler*, 203 S.W.3d 317, 323–24 (Tex. Crim. App. 2006).

## Discussion and Application

To rule in appellant's favor, the trial court would have had to effectively find the evidence showed the following:  (1) Cavinder deliberately spoke to Juror Number Three knowing she was a member of the jury; (2) Cavinder deliberately told Juror Number Three that appellant tried to have her struck but the State saved her for the purpose of prejudicing Juror Number Three against appellant; (3) rather than hide the improper influence, Cavinder then alerted the prosecutor of his improper conduct knowing the prosecutor would have to bring the matter to the trial court's attention; (4) Cavinder deliberately lied to the trial court about mistaking Juror Number Three for Veniremember Fifteen to mask the fact he was attempting to intentionally cause a mistrial; (5) Cavinder deliberately lied to the trial judge about when he left the courtroom notwithstanding the fact the trial judge, the prosecutor, and defense counsel were all likely present when he left the courtroom and could have easily caught him in the lie; (6) appellant's wife's recollection of Cavinder's presence or absence during voir dire approximately

---

[1] *Wheeler* referred to reckless or intentional misconduct.  The Court of Criminal Appeals later limited double jeopardy relief to intentional conduct only. *Ex parte Lewis*, 219 S.W.3d 335, 336–37, 371 (Tex Crim. App. 2007).

6

fifty days later was accurate; and (7) Cavinder did all this because it appeared appellant would likely obtain an acquittal. As evidenced by its ruling, the trial court declined to read the facts in this manner. For the reasons that follow, the record supports the trial court's decision to not construe the facts in appellant's favor.

**(1) Was the misconduct an attempt to abort a trial that was going badly for the State? Put another way, at the time the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?**

The trial court granted the mistrial before the State had presented a single witness. Appellant argued the State was trying to avoid an adverse pretrial ruling regarding the admission of extraneous bad acts. Appellant contended the State had not given timely notice for extraneous bad acts and needed the mistrial to delay the trial and thereby comply with the notice requirements. The record confirms appellant had requested notice of extraneous bad acts, and although the State provided a witness list and an amended witness list consisting exclusively of police officers, the State did not specifically respond to appellant's request for notice.

Regarding the adverse ruling, appellant filed a motion in limine regarding any allegations of extraneous bad acts. At the hearing on the motion in limine, the State said it anticipated testimony about the officers' entry into the home, and if appellant intended to challenge the legality of that entry, the State wanted an opportunity to question some of its witnesses about a prior disturbance during

7

which appellant had barricaded himself and his family inside their home. The prosecutor said that testimony would go to the officers' ability to identify and recognize appellant, the officers' state of mind, the reason the gang task force was asked to serve the warrants, and the reason why the officers thought appellant lived in this particular residence. At this point, appellant pointed out to the judge that he had asked for notice of other bad acts and had not received any. The trial court responded by granting Appellant's motion in limine, by instructing the parties to approach him before starting with those witnesses to determine precisely what the officers could and could not go into, and by informing appellant he was inclined to let the officers say they recognized appellant from prior contact with him but that anything more presented a problem that would have to be discussed.

In short, the adverse ruling to which appellant was referring was the granting of his motion in limine. The trial court gave no definitive ruling regarding the admissibility of the extraneous bad acts, although until the facts were further developed, he was inclined to keep them out. Even the prosecutor acknowledged that the extraneous bad acts became relevant only if appellant challenged the legality of the entry, and, on this record, we do not know if appellant's strategy was to challenge that entry. Appellant was charged with resisting arrest. Tex. Penal Code Ann. § 38.03(a) (West 2011). The unlawfulness of an arrest or search is not a defense to resisting arrest. Tex. Penal Code Ann. § 38.03(b).

8

On the other hand, appellant may have had a self-defense defense. The use of force to resist an arrest or search is justified if, before the actor offers any resistance, the peace officer uses or attempts to use greater force than necessary to make the arrest or search and, further, to the degree the actor reasonably believed the force was immediately necessary to protect himself from the police officer's use or attempted use of excessive force. Tex. Penal Code Ann. § 9.31(c) (West 2011). Shortly after ruling on the motions in limine, the trial judge made statements anticipating this defense. The prosecutor addressed this defense at length during her voir dire. Appellant did not, but he may have deemed it unnecessary given the prosecutor's voir dire. Without knowing the strength of the State's case or of appellant's defense, the trial court could only speculate on the effect any of his rulings had on the parties. We are not persuaded that by granting appellant's motion in limine and by tentatively ruling to keep out the prior disturbance, the trial court would have been compelled to conclude the State, through its investigator, deliberately engaged in a strategy of brinkmanship and perjury to avoid a Class A misdemeanor acquittal. Tex. Penal Code Ann. § 38.03(c), (d).

**(2) Was the misconduct repeated despite the trial court's admonitions?**

Regarding whether the misconduct was repeated after the trial court admonished the State to stop, there is nothing in the record suggesting either the prosecutor or Cavinder repeatedly engaged in any misconduct in defiance of the trial court's admonitions to the contrary. The evidence was just the opposite.

9

Cavinder made one mistake, Cavinder brought the mistake to the prosecutor's attention promptly, and the prosecutor immediately took the matter up with the court.

**(3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?**

Cavinder gave a reasonable, good faith explanation for the conduct. Cavinder said he left the courtroom before the jury was seated. This suggested he left after knowing the jury's composition. Inasmuch as Cavinder appears to have helped with the jury selection, it makes sense he would wait to learn who was on the jury before leaving. When Cavinder made this statement, no one balked at this assertion. The trial judge did not ask follow-up questions suggesting his recollection was different. Similarly, defense counsel, who was presumably present whenever Cavinder left the courtroom, declined to cross-examine Cavinder. About fifty days later, appellant's wife testified that her recollection was that Cavinder did not leave until the jurors themselves left. The trial court could have discounted her recollection. It could have questioned how closely she focused her attention on Cavinder during voir dire, and it could have concluded that although she could honestly say she thought Cavinder left along with the jurors, her recollection was mistaken.

Cavinder also said he mistook Juror Number Three for Veniremember Fifteen. Once again, no one balked or asserted such a mistake was preposterous. Just the opposite, the trial judge said, "I completely believe that he

10

believed he was speaking to [Veniremember Fifteen]." Additionally, we note the trial judge excused the jury around three o'clock in the afternoon. Cavinder could have assumed the case would have proceeded directly to opening statements and the initial witnesses and, therefore, could have assumed anyone in the hall when he returned would not have been a juror and, under the circumstances, most likely would have been one of the excused veniremembers. Additionally, Juror Number Three did not attach her jury badge prominently near her collar but, instead, attached it to her purse, which, in accord with Cavinder's testimony, was apparently hanging at her side. Cavinder may have anticipated the juror badge being more prominently displayed near the collar and, not seeing one, assumed the woman to whom he was talking was not a juror. Finally, Juror Number Three was apparently convinced that Cavinder was not initially aware she was a selected juror. Whatever the explanation, the trial judge stated on the record he thought it was an honest mistake, and the record supports such a finding.

### (4) Was the conduct "clearly erroneous"?

### (5)  Was there a legally or factually plausible basis for the conduct despite its impropriety?

### (6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they intentional?

Cavinder's conduct was admittedly improper, but there was, as explained above, a factually plausible basis for his conduct. Both Cavinder and Juror Number Three agreed Cavinder was mistaken about her status as a juror. Once

11

alerted to the misconduct, the prosecutor promptly brought the matter to the trial court's attention. The trial court could have seen this as some sort of fraud on the court to goad appellant into moving for a mistrial when it was otherwise clear appellant was well on his way to an acquittal, or the trial court could have seen this as Cavinder making an honest mistake, Cavinder recognizing the gravity of the mistake, Cavinder promptly bringing the mistake to the prosecutor's attention, and the prosecutor responsibly bringing the matter to the court's attention to address on the merits, thereby ensuring appellant had a fair trial. The former construction is problematic even on a cold record. The trial court's ruling is consistent with the latter construction, and the latter construction is supported by the record.

Reviewing the evidence in the light most favorable to the trial court's ruling, we find no abuse of discretion. *See Bennett*, 245 S.W.3d at 618, 620. We affirm the denial of appellant's application.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED: January 8, 2015

12